UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RAYMOND WILSON, III,
    Plaintiff,

                                 CIVIL ACTION NO.
    v.                             18-11099-PBS

TOWN OF FAIRHAVEN; FAIRHAVEN POLICE DEPARTMENT;
ROBERT ESPINDOLA, CHAIRMAN FOR THE TOWN;
MICHAEL MYERS, CHIEF OF POLICE; MICHAEL BOUVIER, SERGEANT;
ANDREW QUINTIN, POLICE OFFICER; KEVIN KOBZA, POLICE OFFICER;
MARCY HAALAND, POLICE OFFICER; WAYNE MELLO, POLICE OFFICER;
MAUREEN BEST, DISPATCHER; COMMONWEALTH OF MASSACHUSETTS;
CONSUMER AFFAIRS/GIANT FOOD LLC; STOP & SHOP SUPERMARKET
COMPANY, LLC; THE STOP & SHOP NEW ENGLAND; THE STOP & SHOP
STORE, NO. 427; MICHELLE LEE; NATHANIEL BOWDEN; MARILYN EDWARDS;
AND FAIRHAVEN FIRE DEPARTMENT/EMERGENCY MEDICAL SERVICE,
    Defendants.

**REPORT AND RECOMMENDATION RE:**
**FAIRHAVEN DEFENDANTS' MOTION TO DISMISS (DOCKET ENTRY # 8);**
**FAIRHAVEN DEFENDANTS' AMENDED MOTION TO DISMISS (DOCKET ENTRY #**
**10); DEFENDANTS MARILYN EDWARDS, MICHELLE LEE, AND NATHANIEL**
**BOWDEN'S MOTION TO DISMISS (DOCKET ENTRY # 14); DEFENDANT FIRE**
**DEPARTMENT/EMERGENCY MEDICAL SERVICE'S MOTION TO DISMISS (DOCKET**
**ENTRY # 20); DEFENDANT COMMONWEALTH OF MASSACHUSETTS' MOTION TO**
**DISMISS (DOCKET ENTRY # 34); MOTION OF DEFENDANT, THE STOP &**
**SHOP SUPERMARKET COMPANY, LLC, TO DISMISS PLAINTIFF'S COMPLAINT**
**AGAINST CONSUMER/AFFAIRS/GIANT FOOD LLC, THE STOP & SHOP NEW**
**ENGLAND AND THE STOP & SHOP STORE NO. 427 PURSUANT TO F.R.C.P.**
**RULE 12(b)(6) (DOCKET ENTRY # 31); MOTION OF DEFENDANT, THE STOP**
**& SHOP SUPERMARKET COMPANY, LLC, TO SET ASIDE ENTRY OF DEFAULT**
**PURSUANT TO F.R.C.P. RULE 55(c) (DOCKET ENTRY # 19); DEFENDANTS**
**CONSUMER AFFAIRS/GIANT FOOD LLC'S MOTION TO DISMISS (DOCKET**
**ENTRY # 41); AND PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT**
**(DOCKET ENTRY # 44)**

**March 4, 2019**
**BOWLER, U.S.M.J.**

    Pending before this court are motions to dismiss filed by:

(1) defendants Town of Fairhaven ("the Town of Fairhaven"),

Fairhaven Police Department ("FPD"), Robert Espindola

("Espindola"), Michael Myers ("Myers"), Michael Bouvier
("Bouvier"), Andrew Quintin ("Quintin"), Kevin Kobza ("Kobza"),
Marcy Haaland ("Haaland"), Maureen Best ("Best"), and Wayne
Mello ("Mello") (collectively, "the Fairhaven defendants")
(Docket Entry # 10);[1] (2) Marilyn Edwards ("Edwards"), Michelle
Lee ("Lee"), and Nathaniel Bowden ("Bowden") (collectively, "the
Stop & Shop employees") (Docket Entry # 14); (3) the Fairhaven
Fire Department/Emergency Medical Service ("FFD") (Docket Entry
# 20); (4) Commonwealth of Massachusetts ("the Commonwealth")
(Docket Entry # 34); and (5) defendant Consumer/Affairs/Giant
Food LLC ("Giant Food" or "Consumer Affairs/Giant Food LLC")
(Docket Entry # 41).  Defendant Stop & Shop Supermarket Company,
LLC ("Stop & Shop") filed a motion to set aside an entry of a
default (Docket Entry # 19) and a motion to dismiss (Docket
Entry # 31).  Plaintiff Raymond Wilson, III ("plaintiff") filed
requests for a default as to Giant Food (Docket Entry # 28) and
as to defendants Stop & Shop New England ("SSNE") and the Stop &
Shop Store No. 427 ("Store 427" or "the store") (Docket Entry #
32).  In addition to opposing Stop & Shop's motion to set aside
the entry of default (Docket Entry # 22), plaintiff moves for a
default judgment against Stop & Shop (Docket Entry # 44).

---

[1]  With the exception of Mello, the Fairhaven defendants
previously filed an identical motion to dismiss (Docket Entry #
8).  The above-described amended motion to dismiss replaces the
earlier-filed motion which is thereby rendered moot.

After conducting a hearing, this court took the various motions to dismiss (Docket Entry ## 8, 10, 14, 20, 31, 34, 41) under advisement.  Plaintiff opposes the motions in their entirety.  The remaining motion to set aside the entry of default (Docket Entry # 19) and motion for a default judgment (Docket Entry # 44) are also ripe for review.

## PROCEDURAL BACKGROUND

Plaintiff filed this action in Massachusetts Superior Court (Bristol County) ("the state court") on April 11, 2018.  (Docket Entry # 17, p. 9).  On May 24, 2018, the Fairhaven defendants filed a notice removing the case to this court.  (Docket Entry # 17, pp. 145-150).  With respect to the motions to dismiss, the Fairhaven defendants, the Commonwealth, the Stop & Shop employees, FFD, Giant Food, Stop & Shop, as well as Stop & Shop on behalf of SSNE and Store 427 uniformly move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").  The Commonwealth additionally asserts a lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)"). (Docket Entry # 35).  Giant Food also argues that plaintiff did not effectuate proper service under Fed. R. Civ. P. 12(b)(5) ("Rule 12(b)(5)") or process under Fed. R. Civ. P. 12(b)(4) ("Rule 12(b)(4)").  (Docket Entry # 41).

The complaint consists of various allegations in numbered paragraphs in the body of the complaint, notices of intent to sue, and the attached documents.  (Docket Entry # 17, pp. 9-50).  It broadly asserts violations "of state and [f]ederal civil rights and personal injuries sustained by [plaintiff] stemming from his arrest [on] September 3, 2014" and culminating with his acquittal of the charges in April 2017.  (Docket Entry # 17, p. 50) (Docket Entry # 11-1, pp. 18, 22).[2]  The majority of the claims are not directed at a particular defendant and the complaint often does not specify which claim is brought against which defendant.  Affording the complaint a liberal construction and examining its plain language, see Cortés-Rivera v. Dep't of Corrs. and Rehab. of the Commonwealth of Puerto Rico, 626 F.3d 21, 28 (1st Cir. 2010) (examining "plain language" of complaint and its structure to determine if it raised a claim), it raises: (1) a negligence claim against "the top leadership defendant employers" based on a failure to "discipline, supervise and

---

[2]  The complaint in the state court record includes the notices of intent to sue and a number of other documents.  (Docket Entry # 17, pp. 9-50).  Documents attached to a complaint are part of the complaint for all purposes.  Fed. R. Civ. P. 10(c); Mass. R. Civ. P. 10(c).  In removing this action to this court, the Fairhaven defendants filed copies of the complaint that did not include the notices of intent to sue and the attached documents. (Docket Entry ## 4, 11-1).  This court refers to the body of the complaint (Docket Entry # 17, pp. 9-28) (Docket Entry # 11-1) by the latter docket entry and the attached documents by the former docket entry (Docket Entry # 17, pp. 29-50).

train" (Docket Entry # 11-1, ¶ 59);[3] (2) an abuse of process

claim (Docket Entry # 11-1, ¶¶ 64, 67); (3) a false arrest claim

(Docket Entry # 11-1, ¶ 67); (4) a false imprisonment claim

(Docket Entry # 11-1, ¶ 67); (5) a malicious prosecution claim

(Docket Entry # 11-1, ¶ 67); (6) a Fourth Amendment malicious

prosecution claim under 42 U.S.C. § 1983 ("section 1983")

(Docket Entry # 11-1, ¶¶ 61-62) (Docket Entry # 17, pp. 37-38,

¶¶ 1, 4)[4] and the Massachusetts Civil Rights Act ("MCRA"), Mass.

Gen. Laws ch. 12, §§ 11H, 11I (Docket Entry # 11-1, ¶¶ 61-62)

(Docket Entry # 17, p. 37, ¶ 1); (7) a Fourth Amendment false

arrest claim under section 1983 and the MCRA (Docket Entry # 11-

---

[3] The complaint "repeats and re-alleges" the "allegations and
supporting law [and] cases" set out in notice of claim letters
attached to the complaint. (Docket Entry # 11-1, ¶¶ 61-62).
The claims in the notice of claim letters therefore set out a
number of the claims in this action. See Erickson v. Pardus,
551 U.S. 89, 94 (2007) ("'a pro se complaint, however inartfully
pleaded, must be held to less stringent standards than formal
pleadings drafted by lawyers'") (internal citations omitted);
Fed. R. Civ. P. 10(c).  Separately, the notice of claim letters
describe the negligence claim as brought against the Fairhaven
Police Chief, i.e., Myers, "Senior Fairhaven Police Officers,"
Stop & Shop, and the Commonwealth.  (Docket Entry # 17, pp. 38-
39).  (Docket Entry # 17, p. 38).
[4] The additional reference to "substantive due process rights
under 42 U.S.C. sec. 1983" (Docket Entry # 17, p. 38) is not a
viable claim.  See Hernandez-Cuevas v. Taylor, 723 F.3d 91, 98-
99 (1st Cir. 2013); accord Filler v. Kellett, 859 F.3d 148, 151
(1st Cir. 2017) ("to the extent that Filler's § 1983 malicious
prosecution claim against Kellett was based on the violation of
Filler's right to due process, whether substantive or
procedural, the claim was not cognizable"); Meehan v. Town of
Plymouth, 167 F.3d 85, 88 (1st Cir. 1999) ("§ 1983 malicious
prosecution claim is not properly based on either a procedural
or substantive due process violation").

1, ¶¶ 61-62) (Docket Entry # 17, pp. 37-38, ¶ 2); and (8) race discrimination on the part of a "program or entity receiving Federal financial assistance" under 42 U.S.C. § 2000d ("section 2000d") (Docket Entry # 11-1, ¶¶ 61-62) (Docket Entry # 17, p. 38, ¶ 3).

In pointing out the claims raised in the notice of claim letters attached to the complaint, the Commonwealth correctly notes that a number of the statutory and legal references do not assert viable claims. (Docket Entry # 35, fn. 2, pp. 6-7). More specifically, this court does not construe the references to Fourth and Fourteenth Amendments as alleging or bringing one or more direct constitutional claims. The same paragraph references section 1983 and "'[i]t is well established that "a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983."'" Littler v. Massachusetts, Civil Action No. 17-11277-RGS, 2017 WL 3495173, at *1 n.1 (D. Mass. Aug. 14, 2017) (internal citations omitted); see also Wilson v. Moreau, 440 F. Supp. 2d 81, 92 (D.R.I. 2006). Similarly, this court does not construe the reference to article 14 of the Massachusetts Declaration of Rights as alleging or bringing a direct claim when the same paragraph references the MCRA. See The Do Corp. v. Town of Stoughton, Civil Action No. 13-11726-DJC, 2013 WL 6383035, at

*13 (D. Mass. Dec. 6, 2013) ("MCRA 'occupies the field' under most circumstances, leaving no other recourse for an individual to assert a state constitutional claim against a state actor") (internal citations omitted).  The reference to a criminal statute (Docket Entry # 17, p. 37) (citing Mass. Gen. Laws ch. 265, § 37) does not set out a civil cause of action.  Likewise, this court does not construe the references to 42 U.S.C. § 1988 (Docket Entry # 17, pp. 37-38, ¶¶ 1-2), which provides certain remedies for civil rights violations, as a separate and independent cause of action.  VR Acquisitions, LLC v. Wasatch Cty., 853 F.3d 1142, 1144 n.1 (10th Cir. 2017) ("§ 1988 'does not create [an] independent cause[ ] of action' but instead 'simply "defines procedures under which remedies may be sought in civil rights actions"'") (internal citations omitted).  Finally, although various defendants rely on the civil action cover sheet plaintiff filed in state court (Docket Entry # 17, p. 51) (listing only the MCRA, malicious prosecution, and false arrest) to clarify the causes of action, the cover sheet does not limit the causes of action in the complaint to those identified in the cover sheet.

## STANDARD OF REVIEW

     The standard of review for a Rule 12(b)(6) motion is well established.  To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief

that is plausible on its face" even if actual proof of the facts is improbable.  Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007); Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir. 2016).  The "standard is 'not akin to a "probability requirement," but it'" requires "'more than a sheer possibility that a defendant has acted unlawfully.'"  Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016); Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 532-533 (1st Cir. 2011).  "[A]ll reasonable inferences" are drawn "in the pleader's favor."  Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42 (1st Cir. 2016).

In evaluating a Rule 12(b)(6) motion, the court may consider certain narrow categories of documents outside the complaint without converting the motion "into one for summary judgment."[5]  Ironshore Specialty Ins. Co. v. United States, 871 F.3d 131, 135 (1st Cir. 2017) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  These "'narrow exceptions'" allow a district court to "consider extrinsic documents, such as 'documents the authenticity of which are not disputed by the parties; official public records; documents central to the plaintiff's claim; and documents sufficiently referred to in the complaint' without turning the 12(b)(6) motion into a motion for summary judgment."  Newman v. Lehman Bros. Holdings Inc., 901

---

[5]  The complaint itself includes any documents attached to it. Fed. R. Civ. P. 10(c).

F.3d 19, 25 (1st Cir. 2018) (ellipses, brackets, and citations omitted); accord Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013); Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013).  It is also appropriate to consider documents susceptible to judicial notice.  Giragosian v. Ryan, 547 F.3d 59, 65-66 (1st Cir. 2008).

Here, although the complaint references three witness affidavits and a number of police reports (Docket Entry # 11-1, ¶¶ 17, 29, 34, 50, 53) (Docket Entry # 17, pp. 36-37) which supported a determination of probable cause and issuance of a criminal complaint, the references characterize the documents as "false" or "fatally flawed" and the affidavits as including lies.  See Winfield v. Town of Andover, 305 F. Supp. 3d 286, 294 (D. Mass. 2018) ("Court does not assume that the content of the police reports (where disputed) is true" in ruling on motion to dismiss); Winfield v. Lawrence General Hosp., Civil Action No. 16-11482-IT, 2017 WL 1147444, at *3 (D. Mass. March 27, 2017) (not considering content of police report as true because complaint alleged report was false).  The documents also fall outside the category of official public records.  Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (rejecting police incident reports as part of Rule 12(b)(6) record and adhering to narrow interpretation of "'official public records'"); (Docket Entry # 39-1, pp. 19, 24, 26, 28-30).

Indeed, neither party requests this court to consider the police reports or witness affidavits to resolve the motions to dismiss, thereby waiving the issue.  See Curet-Velazquez v. ACEMLA de Puerto Rico, Inc., 656 F.3d 47, 53-54 (1st Cir. 2011). Accordingly, although the references to the police reports and affidavits in the complaint are part of the record, the allegedly inaccurate and false police reports and witness affidavits themselves (Docket Entry # 39-1, pp. 19, 24, 26, 28-30) are not part of the Rule 12(b)(6) record.

It nevertheless remains appropriate to consider as official public records documents sufficiently referred to in the complaint or documents subject to judicial notice such as the decisions by the Trial Court of the Massachusetts District Court Department (New Bedford Division) ("the New Bedford District Court") and court filings conducting an arraignment, finding probable cause, and issuing a criminal complaint on September 4, 2014 (Docket Entry 39-1, pp. 11, 27, 34), applying for the criminal complaint (Docket Entry # 39-1, p. 34), ordering pretrial release (Docket Entry # 36-1, p. 19), and denying a motion to dismiss based on insufficient evidence to support a clerk magistrate's decision finding probable cause (Docket Entry # 39-1, p. 37).  See Freeman v. Town of Hudson, 714 F.3d at 37 (collecting First Circuit decisions "taking notice of state court decisions") (internal citations omitted); Watterson v.

10

<u>Page</u>, 987 F.2d at 4 (allowing consideration of "Pittsfield District Court orders" on motion to dismiss).  The criminal complaint issued by the clerk magistrate (Docket Entry # 39-1, p. 27) is also an official public record, subject to judicial notice, and referred to in the complaint (Docket Entry # 17, p. 36).  It is therefore also part of the Rule 12(b)(6) record.

An affidavit attached to Stop & Shop's Rule 12(b)(6) motion to dismiss, however, is extraneous to the complaint and does not fall into any exception.  (Docket Entry ## 31, 31-1).  As such, it is excluded from the Rule 12(b)(6) record.  The same affidavit filed by Giant Food to support the motion to dismiss as to the insufficient service arguments under Rules 12(b)(4) and 12(b)(5) (Docket Entry # 41, pp. 3-5) (Docket Entry # 41-1) is properly considered.  <u>See</u> <u>Cutler Assocs., Inc. v. Palace Constr., LLC</u>, 132 F. Supp. 3d 191, 194 (D. Mass. 2015) ("[w]hen reviewing a Fed. R. Civ. P. 12(b)(5) motion, the Court is permitted to look beyond the pleadings and may consider affidavits and other documents to determine whether process was properly served").  In considering the affidavit vis-à-vis insufficient service, this court resolves any ambiguity in plaintiff's favor.  <u>Id.</u>  Plaintiff has the burden to show proper service.  <u>Id.</u> (citing <u>Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc.</u>, 901 F. Supp. 2d 255, 267 (D. Mass. 2012),

which cites Saez Rivera v. Nissan Mfg. Co., 788 F.2d 819, 822 n.2 (1st Cir. 1986)).

As to the Commonwealth's Rule 12(b)(1) motion, this court credits plaintiff's well-pled factual allegations and draws all reasonable inferences in his favor. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citing Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001)). An order allowing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) "at the pleading stage is appropriate only when the facts adumbrated in the plaintiff's complaint, taken at face value, fail to bring the case within the court's subject-matter jurisdiction." Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017).

## FACTUAL BACKGROUND[6]

On September 3, 2014, Bouvier, Quintin and Haaland of the FPD (collectively, "the responding officers") were dispatched to Store 427 in Fairhaven, Massachusetts based on a complaint of a customer exposing himself at the store. (Docket Entry # 11-1, ¶¶ 4, 8-9, 14) (Docket Entry # 36-1, p. 7). The responding officers stopped plaintiff on Route 6 before speaking to any of the witnesses. (Docket Entry # 11-1, ¶¶ 9, 45). During the

---

[6] The factual background sets out the facts in the Rule 12(b)(6) record for purposes of resolving the Rule 12(b)(6) motions to dismiss.

stop, Bouvier refused to tell "plaintiff fully . . . what was" taking place. (Docket Entry # 11-1, ¶ 10). Bouvier did tell plaintiff that witnesses reported that he committed a crime at the Stop & Shop store in Fairhaven. (Docket Entry # 11-1, ¶ 12).

After plaintiff got out of his car, he "saw a green van drive by" and a woman in the front passenger seat putting "her hand up in front of her face." (Docket Entry # 11-1, ¶ 11). Plaintiff later learned that the woman was Lee, a Stop & Shop employee at the store. (Docket Entry # 11-1, ¶¶ 4, 11). Lee prepared one of the three affidavits used to support the application for the criminal complaint against plaintiff. (Docket Entry # 11-1, ¶ 34) (Docket Entry # 17, pp. 34-36). The affidavit omitted the fact that Lee did not see plaintiff commit the crime(s) and that Edwards, another Shop & Stop employee and witness affiant, told Lee what to write in Lee's affidavit.[7] (Docket Entry # 11-1, ¶¶ 4, 34, 50) (Docket Entry # 17, p. 36).

None of the responding officers witnessed any crimes committed by plaintiff. (Docket Entry # 11-1, ¶¶ 8, 15). When

---

[7] Construing the complaint in plaintiff's favor and contrary to the Fairhaven defendants' contention, it does not state that "a witness positively identified the plaintiff while he was standing with the police." (Docket Entry # 11, p. 2). Although the police report by Mello, an FPD officer, details Lee's and Edwards' identifications of plaintiff, the report is not part of the Rule 12(b)(6) record. (Docket Entry # 39-1, p. 30).

plaintiff told Bouvier "to go look at the surveillance at
'427,'" Bouvier responded, "I do not have to.  The witnesses are
my probable cause to arrest you."  (Docket Entry # 11-1, ¶ 13).
Quintin and Haaland then arrested plaintiff.[8]  (Docket Entry #
11-1, ¶ 14).  Plaintiff was "handcuffed, his car was searched
and towed away," and his "video camera was seized."  (Docket
Entry # 11-1, ¶ 8).

Plaintiff was taken to the Fairhaven police station, where
he was "treated poorly."  (Docket Entry # 11-1, ¶ 18).  Upon his
arrival at the police station, FPD staff would not tell him why
he was under arrest and ignored his "many medical issues."
(Docket Entry # 11-1, ¶ 18).  Eventually after a "long time,"
the "'FPD' addressed [plaintiff's] medical issues."  (Docket
Entry # 11-1, ¶ 19).  Plaintiff did not trust the medical staff
at the police station and wanted to go to Saint Luke's Hospital
in New Bedford.  (Docket Entry # 11-1, ¶ 19).  As a result, a
town ambulance transported plaintiff, while handcuffed to a
police officer, to St. Luke's Hospital.  (Docket Entry # 11-1,
¶¶ 20, 22).  The driver "mad[e] sure" plaintiff had a "'ruff
ride'" by traveling over bumps at high speed and rounding
corners at a fast speed causing plaintiff to jerk "back and

---

[8]  The complaint makes a legal conclusion that plaintiff was
"falsely arrest[ed]" and subject to "an illegal search and
seizure."  (Docket Entry # 11-1, ¶ 8).

forth" while handcuffed to the officer.  (Docket Entry # 11-1, ¶ 20-22) (Docket Entry # 17, p. 41).  The complaint describes the rough ride by the ambulance driver as "a common practice" with "arrest[s] of black people" and serves to punish a "black person more than" the arrest itself.[9]  (Docket Entry # 11-1, ¶ 20).

At the hospital, the town ambulance crew unstrapped plaintiff, presumably from a gurney, at which point plaintiff "yelled in pain" because of a bed strap being too tight and "pressing in [his] scrotum area."  (Docket Entry # 11-1, ¶ 23).  Plaintiff remained in "painful handcuffs" at the hospital while treated by hospital staff.  (Docket Entry # 11-1, ¶ 24).

After his discharge from the hospital, plaintiff was held at the Bristol County House of Correction.  (Docket Entry # 11-1, ¶ 25).  The jail was "dirty and not cleaned by guards" and his cell "smelled very bad."  (Docket Entry # 11-1, ¶ 25).  "After a long time," plaintiff made bail but "did not get all his money returned" to him when he left the jail.  (Docket Entry # 11-1, ¶ 26).

In the meantime, Quintin, as the complainant, completed an application for a criminal complaint on September 3, 2014

---

[9]  The only other reference to the "race-based treatment" presumably in violation of section 2000d (Docket Entry # 17, p. 38) is the "racially motivated" criminal complaint signed by Kobza (Docket Entry # 17, p. 35), a police officer with the FPD, and the clerk magistrate.  (Docket Entry # 39-1, p. 27).

charging plaintiff with:  lewd, wanton and lascivious conduct in violation of Massachusetts General Laws chapter 272 ("chapter 272"), section 53; disorderly conduct in violation of chapter 272, section 53; and indecent exposure in violation of chapter 272, section 53.  (Docket Entry # 11-1, ¶ 15) (Docket Entry # 39-1, p. 34).  Three witness affidavits from Stop & Shop employees supported the application, namely, affidavits by Lee, Edwards, and Bowden, another Stop & Shop employee at the store. (Docket Entry # 11-1, ¶¶ 4, 29) (Docket Entry # 17, pp. 34, 36). Drawing reasonable inferences in plaintiff's favor, Bowden's affidavit omitted the fact that Edwards told Bowden what to write.  (Docket Entry # 11-1, ¶ 44).  Edwards' affidavit contained falsehoods or omissions, including the reasonably inferred omission that she told Lee and Bowden what to write in their affidavits.  (Docket Entry # 11-1, ¶¶ 29, 34, 44) (Docket Entry # 17, pp. 36, 42).

Mello's police report of the incident in support of the application included the falsehood that "'after completing the affidavits each victim solely stated they were shocked, mortified, and felt weird about the event that took place.'" (Docket Entry # 17, p. 36).  Bouvier's police report in support of the application "mentioned" the store videotape and stated that Bouvier wanted to view the videotape the "next day." (Docket Entry # 11-1, ¶¶ 17, 53).  After Bouvier saw the

videotape, he recognized there was "no probable cause" for "what he did."[10]  (Docket Entry # 11-1, ¶ 54).  The videotape of the incident, played at plaintiff's criminal trial, did not show plaintiff committing a crime.  (Docket Entry # 11-1, ¶ 56) (Docket Entry # 17, p. 35).  There is no indication that the responding officers reviewed the videotape before Quintin filed the application.  (Docket Entry # 11-1, ¶¶ 13, 17) (Docket Entry # 39-1, p. 34).  The complaint further states, "[a]ll of the defendants knew the video did not show a crime being done on the video by the plaintiff during the whole two and a half years this case went on for," i.e., until the April 11, 2017 not guilty finding by the trial judge.  (Docket Entry # 11-1, ¶ 55) (Docket Entry # 17, p. 50).[11]

Meanwhile, based on the police reports and the three witness affidavits, the clerk magistrate of the New Bedford

---

[10]  The complaint does not specify when Bouvier saw the videotape.

[11]  The above, conclusory and general allegation of knowledge that the videotape did not show a crime lacks the support of other allegations in the complaint.  See Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 44 (1st Cir. 2013) (recognizing that "[e]ven where direct allegations of knowledge are pled in a conclusory fashion, defendants' knowledge of unlawful conduct 'may be inferable from other allegations in the complaint'"). With the exception of Bouvier who "saw the video" (Docket Entry # 11-1, ¶ 54), the facts do not reasonably infer that the other officers, who "did not wait to see the" videotape, actually reviewed it before the Commonwealth, as opposed to plaintiff's attorney, played the videotape at trial.  (Docket Entry # 11-1, ¶ 56) (Docket Entry # 17, p. 35).

District Court found probable cause for all three charges and issued the criminal complaint on September 4, 2014. (Docket Entry # 17, p. 36) (Docket Entry # 39-1, pp. 27, 34). At a September 4, 2014 arraignment at New Bedford District Court, "plaintiff yelled at the prosecutor . . . that the charges were false" whereupon the court ordered plaintiff placed in a holding cell. (Docket Entry # 11-1, ¶ 27). After his release from the holding cell, the court appointed the first of several pro bono lawyers for plaintiff. It was at this time that plaintiff first learned of the charges against him, the "lying witnesses," the witnesses' affidavits by Lee, Edwards, and Bowden, and the police reports. (Docket Entry # 11-1, ¶¶ 29, 34) (Docket Entry # 17, p. 34).

After conducting the arraignment, the judge released plaintiff. (Docket Entry # 36-1, p. 19). The terms of the pretrial release required plaintiff to report each week to a probation officer and complete a form each visit. (Docket Entry # 11-1, ¶ 30) (Docket Entry # 17, p. 42) (Docket Entry # 36-1, p. 19). In the course of reporting to the probation officer, plaintiff had to "risk his life to travel to the court" during a "real bad snow season." (Docket Entry # 11-1, ¶ 32). The judge also ordered plaintiff to stay away from the Stop & Shop store. (Docket Entry # 17, p. 41) (Docket Entry # 36-1, p. 19). In February 2016, a different judge of the trial court removed the

restriction to report to the probation officer.  (Docket Entry #
36-1, p. 19).

Plaintiff became unhappy with the first court-appointed
lawyer and, after 11 months, the trial court appointed a second
pro bono lawyer.  (Docket Entry # 11-1, ¶¶ 33-34).  The new
lawyer filed a motion to dismiss but did not inform the court
that Lee "committed perjury when she lied on her affidavit to
the 'FPD'" and failed to "point out Marilyn Edwards told [Lee]
what to say and write down in the affidavit."  (Docket Entry #
11-1, ¶ 34).  As a result, "[t]hese distorted acts fooled the
Judge."  (Docket Entry # 11-1, ¶ 34).  After reviewing the
documents submitted in support of the application for the
criminal complaint, the court found "sufficient probable cause
to support the charges" and denied the motion to dismiss.
(Docket Entry # 11-1, ¶ 35) (Docket Entry # 39-1, p. 37).
Instead of entering a "nolle prosequi [of] the matter," the
complaint alleges that the Commonwealth "intentionally
manipulated the facts of the case to fool the judge."  (Docket
Entry # 11-1, ¶ 34).

After the denial of the motion, the trial court appointed
two new lawyers "from the same office" for plaintiff, who "was
very upset" with the ruling.  (Docket Entry # 11-1, ¶ 36).
Although the lawyers "missed things of the case," they did
dispatch an investigator to interview Edwards.  (Docket Entry #

11-1, ¶ 36).  As stated in the complaint, the interview revealed additional "lies" by Edwards.  (Docket Entry # 11-1, ¶ 36).

Because "these lawyers did not work out for" plaintiff, the trial court appointed another pro bono lawyer, who proceeded to file several motions, including "[a] motion to dismiss or to remand to the clerk magistrate for a show cause hearing and a motion to suppress the identification procedure."  (Docket Entry # 11-1, ¶¶ 36-39).  The judge considering the motion to dismiss relied on the earlier judge's findings and denied the motion.  (Docket Entry # 11-1, ¶ 40).  Meanwhile, "the Commonwealth intentionally stood by and did not help the Judge correct the court file."  (Docket Entry # 11-1, ¶ 40).  "Another judge allowed in part and denied in part the other motion."  (Docket Entry # 11-1, ¶ 41).  Notwithstanding the opportunity, the Commonwealth did not end the prosecution of plaintiff.  (Docket Entry # 11-1, ¶ 42).

At a hearing on the motion to suppress, Bowden "admitted . . . that he did not see any crime done by [plaintiff] and that" Edwards told "Lee what to say."  (Docket Entry # 11-1, ¶¶ 43, 44).  Bowden stated, "he thought the whole thing with the plaintiff was funny and they all were laughing about it." (Docket Entry # 11-1, ¶ 44).

At the bench trial on April 11, 2017, the Commonwealth called "one 'FPD' officer" and Edwards to testify.  (Docket

Entry # 11-1, ¶ 48) (Docket Entry # 17, p. 50).  As stated in

the complaint, "Edwards lied once again" by testifying that

another Stop & Shop employee "could corroborate her version of

events." (Docket Entry # 11-1, ¶ 49).  On cross-examination,

Edwards admitted that she did not provide this information in

her affidavit or "tell this to the 'FDP'[,]" her store manager,

the "two investigators that interviewed her[,]" or the

prosecutor. (Docket Entry # 11-1, ¶ 50).  The "'FPD' officer"

testified that he arrested plaintiff despite not witnessing

plaintiff commit "any crime." (Docket Entry # 11-1, ¶ 51).  The

Commonwealth played the videotape at the bench trial and, after

deliberating for "two and a half minutes," the judge found the

plaintiff not guilty on all three charges. (Docket Entry # 11-

1, ¶ 56) (Docket Entry # 17, p. 50).

DISCUSSION

I.  <u>Statute of Limitations</u>

The Fairhaven defendants, FFD, Giant Food, SSNE, Store 427,

Stop & Shop,[12] the Stop & Shop employees, and the Commonwealth

("defendants") move to dismiss all of the claims against them on

the basis of the statute of limitations.  (Docket Entry # 11,

II(B)) (Docket Entry # 14, II(B)) (Docket Entry # 21, II(A))

---

[12]  Stop & Shop's pending motion to set aside the default is
addressed elsewhere in this opinion and allowed such that its
arguments seeking dismissal based on the statute of limitations
are ripe for review.

(Docket Entry # 31, p. 2) (Docket Entry # 35, p. 11, n.4) (Docket Entry # 41, II(B)).  Plaintiff maintains he did not know what defendants "were up to until recent[ly]" when he sent "out the notice of claim letter and" when he filed the complaint. (Docket Entry # 37).  He submits that "defendants" fraudulently concealed the causes of action by "intentionally taking the time away" to avoid any liability to plaintiff and/or "intentionally wasted time with the criminal charges in an unprecedented manner."  (Docket Entry ## 23, 27, 37).  With respect to the federal and state malicious prosecution claims, the time began to run when the criminal prosecution ended on April 11, 2017, according to plaintiff.  (Docket Entry ## 23, 27).

In order to allow a motion to dismiss based on a statute of limitations, "'the facts establishing the defense'" must be "'clear "on the face of the plaintiff's pleadings."'"  <u>Trans-Spec Truck Service, Inc. v. Caterpillar Inc.</u>, 524 F.3d 315, 320 (1st Cir. 2008) (internal citations omitted).  A dismissal is therefore appropriate when "the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of either a different statute of limitations period or equitable estoppel."  <u>Id.</u>

Turning to the limitations periods for the various claims, the limitations period for the negligence claim is three years.

Mass. Gen. Laws ch. 260, § 2A ("section 2A").  The state law abuse of process, false arrest, false imprisonment, and malicious prosecution claims likewise carry three-year limitations periods.  See Cuddy v. Sweeney, 386 N.E.2d 805, 806 (Mass. App. Ct. 1979) (three-year period under section 2A "govern[s] malicious prosecution and abuse of process actions"); Mass. Gen. Laws ch. 260, § 4 (certain torts, including false imprisonment, subject to three-year limitations period); Mitchell v. City of Boston, 130 F. Supp. 2d 201, 214 (D. Mass. 2001) (recognizing that state law false arrest claim "is 'a species of false imprisonment'") (internal citations omitted). The limitations period for the MCRA claim is three years.  Mass. Gen. Laws ch. 260, § 5B.  Section "1983 claims borrow the forum state's statute of limitations," Conjugal P'ship Acevedo-Príncipe v. United States, 768 F.3d 51, 56 (1st Cir. 2014), which in this instance is three years.  See Buntin v. City of Boston, 813 F.3d 401, 406 (1st Cir. 2015); Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001).  The section 2000d claim also carries a three-year limitations period.  Ford v. Maryland Attorney Gen., Civil Action No. 17-2525, 2018 WL 5251742, at *5 n. 5 (D.D.C. Oct. 22, 2018) ("[c]laims brought under Title VI also have a statute of limitations of three years") (citing Proctor v. District of Columbia, 74 F. Supp. 3d 436, 457 (D.D.C. 2014)).

As to accrual, Massachusetts law instructs that the three-
year limitations period "'starts to run when an event or events
have occurred that were reasonably likely to put the plaintiff
on notice that someone may have caused [plaintiff's] injury.'"
Shay v. Walters, 702 F.3d 76, 80 (1st Cir. 2012) (quoting Bowen
v. Eli Lilly & Co., 557 N.E.2d 739, 741 (Mass. 1990)); see
Donovan v. Philip Morris USA, Inc., 914 N.E.2d 891, 903 (Mass.
2009) ("cause of action accrues when 'an event or events have
occurred that were reasonably likely to put the plaintiff on
notice that someone may have caused her injury'") (internal
citation omitted).  Under this framework, a plaintiff must
"'have (1) knowledge or sufficient notice that she was harmed
and (2) knowledge or sufficient notice of what the cause of harm
was.'"  Donovan v. Philip Morris USA, Inc., 914 N.E.2d at 903
(internal citation omitted).  Federal law determines the accrual
date of the federal claims.  Villanueva-Méndez v. Nieves-
Vázquez, 440 F.3d 11, 15 (1st Cir. 2006).  Under federal law, "a
section 1983 claim accrues at the moment the plaintiff knows, or
has reason to know, of the injury that is the basis for the
claim."  Nieves v. McSweeney, 241 F.3d at 52.  "'[A] plaintiff
is deemed to know or have reason to know at the time of the act
itself and not at the point that the harmful consequences are
felt.'"  Bettencourt v. Town of Mendon, 334 F. Supp. 3d 468, 483

(D. Mass. 2018) (quoting Morán Vega v. Cruz Burgos, 537 F.3d 14,

20 (1st Cir. 2008)).

A.  Negligence Claims

The negligence claims allege a breach of duty on the part

of "the top leadership defendant employers," namely, Myers,

"Senior Fairhaven Police Officers," Stop & Shop, and the

Commonwealth,[13] for their failure "to properly discipline,

supervise and train" their employees.  (Docket Entry # 11-1, ¶

59) (Docket Entry # 17, pp. 38-39).  These "top leadership

defendant employers" knew about the damage inflicted by their

employees for the two and a half year time period between

plaintiff's arrest and acquittal.  (Docket Entry # 11-1, ¶ 55).

The gravamen of the complaint is that various defendants

wrongfully arrested and then prosecuted plaintiff for an offense

he did not commit, as shown in the store videotape, and that

Edwards, the Stop & Shop "ring leader," lied in her affidavit

and told the other two employees what to say in their

affidavits.  None of the FPD officers saw plaintiff commit any

crime.  Whereas the complaint does not articulate the contours

of the negligent failure "to properly discipline, supervise and

train," it presumably pertains to the FPD's investigatory

"illegal" stop, the arrest notwithstanding a lack of evidence

---

[13]  See footnote three.

including the deficient drive-by identification, and the
continued prosecution even though the videotape showed that
plaintiff did not commit the offense and the witnesses lied in
their affidavits.  (Docket Entry # 11-1).

Plaintiff acknowledges that he learned about the "lying
witnesses" at the September 4, 2014 arraignment.  (Docket Entry
# 11-1, ¶¶ 27, 29).  He also knew that the responding officers,
including Bouvier, did not review the exonerating videotape
before arresting him.  (Docket Entry # 11-1, ¶ 13).  In
assessing the accrual date of a similar negligence claim against
the City of Boston under Massachusetts law, the First Circuit
determined the accrual date was the disclosure date of the
previously unknown exculpatory witness statements obtained by
the plaintiff after a public records request.  Haley v. City of
Boston, 657 F.3d 39, 44-45 (1st Cir. 2011) (allegations of
City's negligent investigation, negligent supervision, and
negligent training accrued at time of disclosure of exculpatory
statements by plaintiff's estranged wife and her sister).  Here,
plaintiff knew about the harm and its cause as arising from the
responding officers' failure to view the videotape or their
failure to draw attention to its known, exculpatory contents as
well as the lies originating with Edwards at the time of his
arraignment.  Having loudly informed the prosecutor at the
arraignment that the charges were false, plaintiff also knew or

should have known about the failure of the Commonwealth to "nolle prosequi the matter" at or around the time of the arraignment.  (Docket Entry # 11-1, ¶¶ 27, 34).  The negligence claims against defendants are therefore untimely.

The Commonwealth's argument that the negligence claim fails because plaintiff did not present the claim within two years after the date the cause of action arose as required under the MTCA (Docket Entry # 35, pp. 11-12) (quoting Mass. Gen. Laws ch. 258, § 4), provides an alternative basis to dismiss the negligence claim against the Commonwealth.  The MTCA "provide[s] 'a comprehensive and uniform regime of tort liability for public employers.'"  Morrissey v. New England Deaconess Ass'n-Abundant Life Cmtys., Inc., 940 N.E.2d 391, 399 (Mass. 2010).  The statute is liberally construed, id. at 401, and waives the sovereign immunity of the Commonwealth and its municipalities by allowing suits against a public employer "based on the negligent or wrongful conduct of public employees who acted within the scope of their employment."  Martini v. City of Pittsfield, 2015 WL 1476768, at *9 (D. Mass. March 31, 2015); see Daveiga v. Boston Public Health Comm'n, 869 N.E.2d 586, 589 (Mass. 2007) (chapter "258 replaced the common-law scheme by which the Commonwealth and its municipalities enjoyed immunity from suit for tortious wrongdoing, subject only to miscellaneous exceptions"); Roberts v. Town of Bridgewater, 2015 WL 4550783,

at *3 (D. Mass. July 28, 2015) ("public employers maintain liability for the negligent acts of public employees committed within the scope of their employment"); Mass. Gen. Laws ch. 258, § 2.  By its terms, the statute requires a plaintiff to "present[] his claim in writing" to the Commonwealth "within two years after the date upon which the claim of action arose." Mass. Gen. Laws ch. 258, § 4.  Plaintiff's September 17, 2017 presentment letter to the Commonwealth is more than two years after the negligence claim arose and therefore bars the claim. See, e.g., Haley v. City of Boston, 657 F.3d at 54-55 (allowing motion to dismiss negligence claims against the City of Boston because of untimely presentment and rejecting tolling presentment to the date state court vacated conviction).

B.   Common Law Abuse of Process Claim

Liberally reading the complaint, it alleges an abuse of process claim but fails to denote which defendants engaged in the abuse.  (Docket Entry # 11-1, ¶¶ 63, 67).  It does state that Kobza issued the application which lead to the "fatally flawed" criminal complaint.  (Docket Entry # 17, p. 35). Plaintiff learned about the charges at the September 4, 2014 arraignment at the same time he learned about the "lying witnesses" and their false affidavits.  (Docket Entry # 11-1, ¶ 29) (Docket Entry # 17, p. 37).

28

An abuse of process claim has "three elements:  '[1] that
process was used, [2] for an ulterior or illegitimate purpose,
[3] resulting in damage.'"  477 Harrison Ave., LLC v. Jace
Boston, LLC, 74 N.E.3d 1237, 1244 (Mass. 2017) (internal
citations omitted).  An abuse of process claim is "distinct"
from false arrest and malicious prosecution claims "to the
extent that it can be held to lie regardless of whether there
was probable cause or whether the proceedings terminated in
favor of the charged party." Santiago v. Fenton, 891 F.2d 373,
388 (1st Cir. 1989); accord Gutierrez v. Mass. Bay Transp.
Auth., 772 N.E.2d 552, 563 (Mass. 2002).  Thus, "even where
probable cause exists to arrest, an abuse of process claim may
still survive where there is evidence that "'the officers'
reports intentionally exaggerated the gravity of the situation
so that the prosecutor would be more likely to press charges.'"
Hutchins v. McKay, 285 F. Supp. 3d 420, 429 (D. Mass. 2018)
(quoting Gutierrez v. Mass. Bay Transp. Auth., 772 N.E.2d at
563); accord Yacubian v. United States, 750 F.3d 100, 110 (1st
Cir. 2014) ("[o]ne can 'use process' under Massachusetts law by
providing information that causes process to be used
improperly").  The term process "'means causing papers to be
issued by a court to bring a party or property within its
jurisdiction.'"  Id. (setting out Massachusetts abuse of process
claim and citing Vittands v. Sudduth, 730 N.E.2d 325, 332 n. 9

(Mass. App. Ct. 2000)).  The relevant facts pertaining to the abuse of process claim therefore involve the conduct of the responding officers and Kobza, along with Edwards, Lee, and Bowden who prepared the false affidavits.  Their conduct purportedly led to the "bogus" criminal complaint.  The Commonwealth then refused to nolle prosequi the matter.

More to the point, an abuse of process claim "ordinarily 'accrues at such time as the criminal process is set in motion against the plaintiff, or when the plaintiff was aware that "such process was employed for an inappropriate collateral objective."'"  Watson v. Mita, Civil Action No. 16-40133-TSH, 2017 WL 4365986, at *4 (D. Mass. Sept. 29, 2017) (applying this general rule from other jurisdictions and noting that the "First Circuit has not ruled directly on" accrual of abuse of process claim) (internal citation omitted).  In Watson, the accrual of the abuse of process claim involving Watson's warrantless arrest occurred "when the criminal proceedings were initiated against [Watson]," which "at the latest" was "the date of his arraignment" shortly after the arrest.  Id.  Here too, the accrual of plaintiff's abuse of process claim took place no later than the September 2014 arraignment.  The continued use of the false affidavits to "fool" the judges during subsequent proceedings (Docket Entry # 11-1, ¶¶ 34, 40) does not restart the three-year period because plaintiff already knew about the

30

initiation of the process with the same false affidavits.   More
broadly, plaintiff knew about the harm caused by the Stop & Shop
employees lying under oath, the exonerating video, and the
responding officers' reliance on these witnesses at the time of
his arraignment.   (Docket Entry # 11-1, ¶¶ 12-15, 17, 27, 29).
He also knew about the prosecutor's failure to nolle prosequi
the matter at the arraignment when plaintiff loudly informed the
prosecutor that the charges were false and the prosecutor did
not dismiss the charges.   Accordingly, the abuse of process
claim is untimely.

C.   <u>Common Law, Section 1983, and MCRA False Imprisonment Claims</u>

Based on the allegations in the complaint, the false
imprisonment claims arise out of the arrest without probable
cause that led to plaintiff's confinement at the Bristol County
House of Correction and the holding cell at New Bedford District
Court.   Bouvier purportedly ordered the false imprisonment
before looking at the exonerating video while Edwards, Lee, and
Bowden provided false affidavits to support the application for
a criminal complaint and its issuance by the magistrate-clerk.
(Docket Entry # 11-1, ¶¶ 12-15, 17, 25-29, 52).

A false imprisonment claim under Massachusetts law requires
an "'intentional and unlawful confinement of a person, either
directly or indirectly, of which the person confined is
conscious or is harmed by such confinement.'"   <u>Walker v. Femino</u>,

31

311 F. Supp. 3d 441, 455 (D. Mass. 2018) (internal citations omitted).  A police officer's liability may arise when, "either directly or indirectly, he causes the false arrest of a putative tort claimant."  Jonielunas v. City of Worcester Police Dep't, 338 F. Supp. 2d 173, 177 (D. Mass. 2004).  As to Edwards, Lee, and Bowden, "[a] person may be liable for false imprisonment not only when the person's own acts directly impose a restraint upon the liberty of another but also when that person, by providing false information, causes such restraint to be imposed."  Sarvis v. Boston Safe Deposit and Trust Co., 711 N.E.2d 911, 921 (Mass. App. Ct. 1999).  False imprisonment covers the time period of detention without legal process and ends once the plaintiff is subject to legal process, such as "bound over by a magistrate or arraigned on charges."  Wallace v. Kato, 549 U.S. 384, 389 (2007) (addressing section 1983 false imprisonment claim and explaining common law's distinctive treatment of malicious prosecution claim).  Once process issues, the unlawful detention is remedied through the entirely distinct tort of malicious prosecution.  Id. at 390; see Harrington v. City of Nashua, 610 F.3d 24, 29 (1st Cir. 2010) ("commencement of a criminal case by the institution of legal process marks the dividing line between claims of false imprisonment and claims of malicious prosecution, making those species of claims legally separate and distinct").

With respect to the accrual of the state and federal false imprisonment claims, plaintiff knew about his confinement, the "lying witnesses," the lack of justification for the confinement and its cause by the time of the arraignment and release from confinement.[14]  (Docket Entry # 11-1, ¶¶ 13, 27, 29-30).  He also knew about the prosecutor's failure to dismiss the charges at the arraignment notwithstanding plaintiff's characterization of the charges as false.  "The limitations period for a [section 1983] Fourth Amendment claim of false imprisonment begins to run when the false imprisonment ends; that is, when the putative plaintiff is either released or detained pursuant to legal process."  Harrington v. City of Nashua, 610 F.3d at 28; accord Holmes v. Meleady, 738 F. Supp. 2d 196, 201-202 (D. Mass. 2010) (limitations period for the section 1983 false imprisonment claim "begins when the arrestee is released or detained pursuant to legal process") (citing Wallace v. Kato, 549 U.S. at 389); see Almeida v. Rose, Civil Action No. 12-11476-PBS, 2013 WL 6524652, at *11 (D. Mass. Dec. 9, 2013) (section 1983 "false imprisonment claim became ripe in September, 2008, when Almeida claims to have been arraigned").  The fact that a false imprisonment claim involves false evidence which may eventually

---

[14]  Although released from confinement, plaintiff remained subject to weekly reporting to a probation officer.  By this time, the criminal process had commenced.

impugn an anticipated future conviction does not toll the time period under Heck v. Humphrey, 512 U.S. 477 (1994).  See Wallace v. Kato, 549 U.S. at 392-397.[15]  As reasoned in Wallace, the Heck decision involved an extant conviction analogized to the tort of malicious prosecution.  Id.  Here, there is no extant conviction and the claim at issue is false imprisonment as opposed to malicious prosecution.  The three-year time period for the section 1983 false imprisonment claim therefore began at the time of plaintiff's September 4, 2014 arraignment.

Adhering to the same reasoning, the limitations period for the common law and MCRA false imprisonment claims likewise began to run upon plaintiff's release from confinement.  See Miller v. Home Depot USA, Inc., 2011 WL 2556820, at *1 (Mass. App. Ct. 2011) (MCRA and false imprisonment claims filed after reversal of criminal conviction on larceny charge "began to accrue" at the time of the underlying episode that gave rise to the complaint, i.e., the alleged larceny) (unpublished).  At that time, plaintiff understood the basis for the false confinement

---

[15]  "[A] court may stay such claims pending the outcome of the pending criminal case."  Spencer v. Dookhan, Civil Action No. 13-11431-DJC, 2014 WL 6904377, at *4 (D. Mass. Dec. 5, 2014) (citing Wallace v. Kato, 549 U.S. at 393, and Crooker v. Burns, 544 F. Supp. 2d 59, 64-65 (D. Mass. 2008)).

and its cause.  Accordingly, the common law, MCRA, and section 1983 false imprisonment claims are untimely.[16]

D.  Common Law, MCRA, and Section 1983 False Arrest Claims

The false arrest claims stem from the arrest based on the false affidavits by Edwards, Lee, and Bowden, the failure of Bouvier to view the exonerating videotape, and the application for the criminal complaint.  Here again, plaintiff learned about the "lying witnesses" and read the police reports at the September 4, 2014 arraignment.

A section 1983 false arrest claim under the Fourth Amendment, "where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."[17]  Wallace v. Kato, 549 U.S. at 397; see Nieves v. McSweeney, 241 F.3d at 52 ("it is pellucid that all claims based" on the arrest "accrued at the time that those events occurred—May 12, 1994—because the appellants had ample reason to know of the injury then and there"); see Harrington v. City of Nashua, 610 F.3d at 30 (Wallace, 549 U.S. at 391, foreclosed the limited opening left in Neives, 241 F.3d

_____

[16]  As explained in footnote 18, any section 1983 false imprisonment conspiracy claim is also untimely.
[17]  The circumstances here do not involve a pretrial detainee subject to pretrial confinement after issuance of legal process who did not proceed to trial and, instead, had the charges dismissed after further drug testing showed no controlled substance and, hence, no basis for the charges.  See Manuel v. City of Joliet, 137 S. Ct. 911 (2017).

at 52 n.4, of possible accrual after time of arrest in "rare and

exotic circumstances" ).[18]  Here again, plaintiff knew all the

facts regarding the false affidavits, Bouvier's failure to

review the videotape, and the application for the criminal

complaint based on the false allegations no later than the

September 4, 2014 arraignment.  (Docket Entry # 11-1, ¶¶ 12-13,

27, 29).  He also knew about the prosecutor's decision to

proceed with the prosecution at the time of the arraignment when

---

[18]  To the extent plaintiff raises a section 1983 false arrest,
false imprisonment, or continuing civil rights conspiracy claim,
such claims are also untimely.  See Nieves v. McSweeney, 241
F.3d at 51-53; Kennedy v. Town of Billerica, 502 F. Supp. 2d
150, 155-156 (D. Mass. 2007); see also Kadar Corp. v. Milbury,
549 F.2d 230, 234 (1st Cir. 1977) ("'cause of action for each
invasion of the plaintiff's interest'" arises at the "'time of
that invasion and . . . applicable statute of limitations'" runs
"'from that time,'" a principle that applies to "civil
conspiracies to violate the federal civil rights") (internal
citations omitted).  The facts do not suggest any concealment of
what transpired inasmuch as plaintiff acknowledges he knew about
the false affidavits, read the police reports, and knew about
Bouvier's failure to review the exonerating videotape by the
time of his arraignment on September 4, 2014.  The facts also
fail to suggest a longstanding, pre-existing conspiracy prior to
the arrest within the meaning of Robinson v. Maruffi, 895 F.2d
649, 654-655 (10th Cir. 1990).  See Nieves v. McSweeney, 241
F.3d at 51-52; Kennedy v. Town of Billerica, 502 F. Supp. 2d
150, 155-156.  Simply stated, in light of the factual
circumstances set out in the complaint, "plaintiff cannot
circumvent the accrual rule articulated in Nieves and Hernandez
Jimenez through a conspiracy theory of liability." Kennedy v.
Town of Billerica, 502 F. Supp. 2d at 156.  As cogently
explained in the lower court's decision in Nieves, which the
First Circuit affirmed, the "limitation period for the
conspiracy's first object, namely, the use of excessive force
and arrest without probable cause, accrued on the date of the
plaintiffs' arrest." Nieves v. McSweeney, 73 F. Supp. 2d 98,
103 (D. Mass. 1999), aff'd, 241 F.3d 46 (1st Cir. 2001).

plaintiff loudly informed the prosecutor that the charges were false and the prosecutor did not dismiss the charges.[19] Plaintiff therefore had all the facts necessary to challenge the lawfulness of his confinement no later than his arraignment. See, e.g., Sherlock v. Stancato, Civil Action No. 10-11703-JGD, 2011 WL 1564111, at *4 (D. Mass. April 22, 2011) (plaintiff's "[s]ection 1983 false arrest claim based on her February 12, 2007 arrest for public drinking . . . accrued, at the latest," when plaintiff "was arraigned in state court"). For similar reasons, the common law and MCRA false arrest claims are untimely. See Mitchell v. City of Boston, 130 F. Supp. 2d 201, 215 (D. Mass. 2001) (construing claim as common law false arrest claim and, because "plaintiff knew at the time of his arrest all the facts necessary to challenge its lawfulness, the action is time-barred"); see generally Nieves v. McSweeney, 2003 WL 22952218, at *2 (Mass. App. Ct. Dec. 15, 2003) (to the extent "plaintiffs' [state law] conspiracy claims stem from . . . false arrest of the plaintiffs on May 12, 1994, . . . they are correspondingly barred by the statute of limitations") (unpublished).

---

[19] In any event, plaintiff's weekly reporting to the probation officer that fall also placed him on notice that the prosecutor was not issuing a nolle prosequi of the matter.

Plaintiff's assertion that defendants "wasted time with the criminal charges" and that their "fraudulent concealment of intentionally taking the time away" provides a basis for tolling (Docket Entry # 27) and other similar assertions (Docket Entry # 37) are misguided.  See Abdallah v. Bain Capital LLC, 752 F.3d 114, 121 (1st Cir. 2014).  "Equitable tolling does not apply when a plaintiff has facts essential for the commencement of a suit."  Id.  Rather, the doctrine only applies when "'the prospective plaintiff did not have, and could not have had with due diligence, the information essential to bringing suit.'" Id. (quoting Protective Life Ins. Co. v. Sullivan, 682 N.E.2d 624, 635 (Mass. 1997).  Plaintiff's reliance on fraudulent concealment does not reset the accrual date because plaintiff had all of the facts necessary to bring the causes of action in early September 2014 and, in fact, he had actual knowledge of the falsity of the witness affidavits and the lack of a basis for the charges no later than the date of his arraignment.[20]  See id. ("fraudulent concealment requires, at least, concealment of facts necessary to bring a cause of action" and it does not toll limitations period "'if the plaintiff has actual knowledge of

---

[20]  The above reasoning applies to all of the claims except for the malicious prosecution claims which did not accrue until the termination of the criminal proceeding on April 11, 2017.

the facts giving rise to his cause of action'"").  The false arrest claims are therefore untimely.

E.   Section 2000d Claim

"'Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin.'"  <u>Pollard v. Georgetown Sch. Dist.</u>, 132 F. Supp. 3d 208, 230 (D. Mass. 2015) (citing <u>Zeno v. Pine Plains Cent. Sch. Dist.</u>, 702 F.3d 655, 664 (2d Cir. 2012)).  The premise for the section 2000d claim consists of the rough ride in the ambulance and Kobza's criminal complaint.[21]  Massachusetts' "three-year statute of limitations for personal injury claims" applies to the section 2000d claim.  <u>Govan v. Trustees of Bos. Univ.</u>, 66 F. Supp. 2d 74, 80 (D. Mass. 1999) (collecting cases).  Inasmuch as the operative events relative to this claim all took place more than three years before plaintiff filed the complaint and do not involve any fraudulent concealment or other basis for tolling, the section 2000d claim is untimely.

F.   Malicious Prosecution Claims

As explained in the procedural background, the complaint pleads common law, section 1983 malicious prosecution, section 1983 malicious prosecution conspiracy,[22] and MCRA malicious

---

[21]   See footnote nine and related text.
[22]   Unless otherwise noted, the section 1983 malicious prosecution and section 1983 malicious prosecution conspiracy

prosecution claims.  The basis for the claims is the September
4, 2014 finding by the clerk magistrate of probable cause.  The
police reports and the three witness affidavits by Edwards, Lee,
and Bowden supported the application and the process issued by
the clerk magistrate.  Quintin signed the application and Kobza
signed the criminal complaint.  (Docket Entry # 39-1, pp. 27,
34).  Mello included a false statement in his police report that
the witnesses stated "'they were shocked, [and] mortified'" by
the incident.  (Docket Entry # 17, p. 36).  During the
arraignment, plaintiff also shouted at the prosecutor that the
charges were false.  In addition, Bouvier mentioned in his
police report that he wanted to see the videotape the next day
and, after he saw it, he "disappeared from the case."  (Docket
Entry # 11-1, ¶¶ 13, 53-54).  Kobza, Quintin, Mello, and
Haaland, however, did not view the videotape and the complaint
does not set out sufficient facts to support their asserted
knowledge that it did not show a crime.[23]

Plaintiff argues that the "state and federal malicious
prosecution" claims accrue "after the criminal matter is finally
over."  (Docket Entry # 27, p. 8).  If true, the April 11, 2017
termination of the criminal proceeding with the not guilty

---

are collectively referred to as "the section 1983 malicious
prosecution claims."
[23]  See footnote 11 and related text.

finding (Docket Entry # 17, p. 50) renders the malicious
prosecution claims timely filed less than three years later.

Contrary to defendants' argument, plaintiff is correct.  A
common law malicious prosecution claim accrues when the
underlying action terminates.  See Billings v. Commerce Ins.
Co., 936 N.E.2d 408, 413 (Mass. 2010) ("termination of the
underlying action is the event that ripens a malicious
prosecution claim and starts the clock on the statute of
limitations"); Britton v. Thompson, No. 986204B, 1999 WL
1318995, at *3 (Mass. Super. March 30, 1999) (common law
"malicious prosecution claim accrued as of the date of the
favorable termination on the prior criminal larceny
proceedings") (unpublished).  Similarly, a section 1983
malicious prosecution conspiracy claim "does not accrue until
the termination of the criminal proceedings." Nieves v.
McSweeney, 241 F.3d at 53.  A section 1983 malicious prosecution
claim adheres to the same rule.  See Holmes v. Meleady, 738 F.
Supp. 2d 196, 202 (D. Mass. 2010) ("federal constitutional claim
of malicious prosecution" under section 1983 "complains about
the wrongful institution of legal process and, accordingly,
accrues upon termination of the criminal proceedings against the
would-be plaintiff").  The coextensive MCRA malicious
prosecution claim is therefore also timely.  See generally
Batchelder v. Allied Stores Corp., 473 N.E.2d 1128, 1131 (Mass.

1985) ("[l]egislature intended to provide a remedy under G.L.

823 c. 12, § 11I, coextensive with 42 U.S.C. § 1983, except that

the Federal statute requires State action whereas its State

counterpart does not").[24]

In light of the timeliness of the malicious prosecution

claims, this court turns to the other arguments made by the

various defendants in seeking to dismiss the remaining malicious

prosecution claims.

## II.  Fairhaven Defendants and FFD

### A.  Town of Fairhaven

The Fairhaven defendants maintain that the Town of

Fairhaven is not a "person" subject to liability under the MCRA.

They also submit that the absence of any policy or custom that

caused the constitutional deprivation warrants dismissal of the

section 1983 malicious prosecution and conspiracy claims.

Plaintiff does not present a cogent argument to the contrary.

The Fairhaven defendants are correct that the Town of

Fairhaven is not a "person" within the meaning of the MCRA.  See

Mass. Gen. Laws ch. 12, § 11H, 11I (providing civil cause of

---

[24]  This case does not involve a conviction and subsequent
exonerating evidence in the form of DNA evidence such that a
plaintiff knew or should have known about a conspiracy to
falsely convict him no later than the time of the criminal
conviction and incarceration.  See Mitchell v. City of Boston,
130 F. Supp. 2d 201, 214 (D. Mass. 2001); Messere v. Murphy, 585
N.E.2d 350, 351 (Mass. App. Ct. 1992).

action against "any person or persons"); Howcroft v. City of
Peabody, 747 N.E.2d 729, 744 (Mass. App. Ct. 2001)
("municipality is not a 'person' covered by" the MCRA); accord
Kelley v. LaForce, 288 F.3d 1, 11 n.9 (1st Cir. 2002)
("municipality cannot be sued under the MCRA" and citing
Howcroft, 747 N.E.2d at 744); see also Pimentel v. City of
Methuen, 323 F. Supp. 3d 255, 272 (D. Mass. 2018) (although "SJC
has not yet decided whether municipalities may be liable under
the MCRA," the Massachusetts "Appeals Court has held that 'a
municipality is not a 'person' covered by the [MCRA]'") (quoting
Howcraft, 747 N.E.2d at 744).  The MCRA malicious prosecution
claims against the Town of Fairhaven are therefore subject to
dismissal.

With respect to the existence of a policy or custom, a
local governing body such as the Town of Fairhaven is not liable
under section 1983 unless the "'execution of [the town's] policy
or custom, whether made by its lawmakers or by those whose
edicts or acts may fairly be said to represent official policy,
inflicts the injury . . ..'"  Massó-Torrellas v. Municipality of
Toa Alta, 845 F.3d 461, 468-69 (1st Cir. 2017) (quoting Monell
v. Dep't of Social Services, 436 U.S. 658, 694 (1978)).  The
complaint refers in general to a failure "to properly
discipline, supervise and train the lower rank police officers"
(Docket Entry # 17, p. 38) and that the Town of Fairhaven is

"responsible" for the misconduct.  Here, as in Massó-Torrellas,
there is "no further development of this bare assertion in the
Complaint regarding any specific Municipality actions undertaken
pursuant to its customs and policies."  Id. at 469 (affirming
dismissal given absence of plausible constitutional claim
against municipality).

It is equally true that simply showing that an individual
police officer received inadequate training is not sufficient to
attach liability against the municipality.  Nault v. Bazarewsky,
Civil Action No. 16-11555-FDS, 2018 WL 1053315, at *9 (D. Mass.
Feb. 26, 2018).  Rather, "'the training program as a whole must
be found faulty.'"  Id. (quoting Calvi v. Knox Cty., 470 F.3d
422, 429 (1st Cir. 2006).  Here again, the complaint is devoid
of any facts that show that even a single officer received
inadequate training.  Notably, the complaint lacks facts or
reasonable inferences therefrom indicating that the September
2014 arrest and charges lodged against plaintiff based on the
false affidavits is anything more than an isolated incident.
See id. (noting that, "at most the evidence suggests that [the
police officer] fabricated the claim of assault and battery with
a car door" but, as stated by the First Circuit, "an isolated
instance of police misconduct is insufficient to warrant section
1983 liability against the municipality").  Accordingly, the

section 1983 malicious prosecution claims against the Town of
Fairhaven are also subject to dismissal.

With respect to the common law malicious prosecution claim,
the Fairhaven defendants argue that the Massachusetts Tort
Claims Act ("MTCA"), Massachusetts General Laws chapter 258,
section 10(c) ("section 10(c)"), excludes intentional torts thus
preserving the state's sovereign immunity and rendering the Town
of Fairhaven immune from common law liability for malicious
prosecution.  (Docket Entry # 11).  The MTCA provides a limited
waiver of sovereign immunity for certain torts against a "public
employer."  Mass. Gen. Laws ch. 258, § 2.  A "public employer"
includes "any county, city, town," and "any department" thereby
encompassing the town and the FPD as a public employers.  Mass.
Gen. Laws ch. 258, § 1; Damon v. Hukowicz, 964 F. Supp. 2d 120,
136 (D. Mass. 2013) ("Hadley Police Department falls within the
definition of a 'public employer'").  "The MTCA does not apply
to *intentional* torts, and therefore there is no waiver of
sovereign immunity as to those claims."  Almeida v. Rose, Civil
Action No. 12-11476-PBS, 2013 WL 6524652, at *8 (D. Mass. Dec.
9, 2013); accord Barrows v. Wareham Fire Dist., 976 N.E.2d 830,
835 (Mass. App. Ct. 2012) (MTCA "expressly exempts intentional
torts from its provisions, and therefore a public employer
cannot be sued for the intentionally tortious conduct of its
employee").  The exception from the waiver under section 10(c)

expressly includes a malicious prosecution claim as an
intentional tort.  Mass. Gen. Laws ch. 258, § 10(c).  The common
law malicious prosecution against the Town of Fairhaven
therefore fails to withstand dismissal.

B.  FPD, FFD and Individual Officers in their Official Capacity

The Fairhaven defendants and the FFD seek to dismiss all of
the claims against the FPD and the FFD because they have no
legal existence separate and apart from the Town of Fairhaven
and the claims against them are duplicative of the claims
against the town.  (Docket Entry ## 11, 21).  The Fairhaven
defendants also contend that the MTCA does not waive sovereign
immunity of the individual officers in their official capacities
for intentional torts, such as malicious prosecution.  (Docket
Entry # 11, pp. 9, 15-19).  The FFD similarly asserts that the
MTCA does not waive its immunity for the common law intentional
tort claims, including the malicious prosecution claim, and that
the FFD is not a "person" within the meaning of the MCRA or
subject to suit under section 1983.  (Docket Entry # 21, pp. 6-
9).  Plaintiff does not assert a viable argument to the
contrary.

First, it is well established that a police department and,
by extension, a fire department of a town is not a separate
entity from the town and is not subject to suit under section
1983.  See Merisier v. Ellender, 197 F. Supp. 3d 310, 320 (D.

46

Mass. 2016) (dismissing claim against town police department because it "is not a separate entity from the Town"); Henschel v. Worcester Police Dep't, 445 F.2d 624 (1st Cir. 1971) ("Henschel") (a police department is not "a suable entity" in a section 1983 suit).  The section 1983 malicious prosecution and conspiracy claims against the FPD and the FFD are subject to dismissal on this basis.

Second, because neither the Commonwealth nor its political subdivisions is a "person" within the meaning of the MCRA, a municipality is not subject to suit under the MCRA.  Howcroft v. City of Peabody, 747 N.E.2d 729, 744-45 (Mass. App. Ct. 2001). Although Howcroft did not involve a municipal department, courts logically extend the reasoning of the decision to encompass subdivisions of the Commonwealth as not subject to suit under the MCRA.[25]  See Canales v. Gatzunis, 979 F. Supp. 2d 164, 175 n. 52 (D. Mass. 2013) (dismissing MCRA claim against sheriff's department and citing Howcroft, 747 N.E.2d at 744-45); Damon v. Hukowicz, 964 F. Supp. 2d 120, 150 (D. Mass. 2013) (allowing summary judgment on MCRA claim against police department and citing Howcroft, 747 N.E.2d at 744-45); Morrissey v. Town of Agawam, 883 F. Supp. 2d 300, 316-17 (D. Mass. 2012) (allowing

---

[25]  By asserting that the FPD is not a separate entity from the town, the Fairhaven defendants' argument encompasses the above principle.

summary judgment on MCRA claim against police department and citing Howcroft, 747 N.E.2d at 744); Meagher v. Andover Sch. Comm., 94 F. Supp. 3d 21, 45 (D. Mass. 2015) (dismissing MCRA claim against school department and citing case citing Howcroft, 747 N.E.2d at 744).  Adhering to this precedent, the MCRA claims against the FPD and the FFD are subject to dismissal.

Third, as previously explained, the MTCA exempts intentional torts from the statute's waiver of sovereign immunity for claims against public employers.  Mass. Gen. Laws ch. 258, §§ 2, 10(c).  Simply stated, the statute "expressly exempts intentional torts from its provisions, and therefore a public employer cannot be sued for the intentionally tortious conduct of its employee."  Barrows v. Wareham Fire Dist., 976 N.E.2d 830, 835 (Mass. 2012) (citing section 10(c)).  A town's "fire district and the board of water commissioners" are therefore exempt from the intentional tort listed in section 10(c).  Id. at 833, 836-38 (finding "town," defined as the "Wareham fire district and the board of water commissioners of Wareham," exempt from defamation, one of the enumerated torts in section 10(c)); see Mass. Gen. Laws ch. 258, § 1 (defining "public employer" to include a department of the town).  The FFD is therefore exempt from liability for the common law malicious

prosecution claim, an intentional tort expressly listed in section 10(c).[26] See id.

Fourth, a suit against a state official acting "in his or her official capacity is the same as a suit 'against the entity of which the officer is an agent.'" Tyler v. Massachusetts, 981 F. Supp. 2d 92, 95 (D. Mass. 2013) (quoting Monell v. New York City Dep't of Social Servs., 436 U.S. at 690 n.55) (internal brackets omitted). State officials, such as the individual FPD officers, acting in "their official capacities are not 'persons' [within] the meaning of section 1983, and therefore are not subject to suit in the federal courts without a State's consent." Id. (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 65-67 (1989)). An MCRA claim against an individual municipal employee in his official capacity is also deficient because "'"a municipality cannot be sued under the MCRA"'" and an MCRA claim against, for example, a Mayor in his official capacity is a claim against the municipality. Fletcher v.

---

[26] The Fairhaven defendants do not make this argument as a means to dismiss the common law malicious prosecution claim against the FPD. A "public employer" includes "any county, city, town," and "any department." Mass. Gen. Laws ch. 258, § 1; Damon v. Hukowicz, 964 F. Supp. 2d 120, 136 (D. Mass. 2013) ("Hadley Police Department falls within the definition of a 'public employer'"). Although the Fairhaven defendants waived the argument that the MTCA bars the common law malicious prosecution claim against the FPD under section 10(c) for purposes of this motion, the waiver does not extend to future filings, including a motion for judgment on the pleadings.

Szostkiewicz, 190 F. Supp. 2d 217, 230 (D. Mass. 2002) (internal citations omitted); see also Howcroft v. City of Peabody, 747 N.E.2d at 744-45 (affirming summary judgment on MCRA claim in favor of individual defendants in their official capacities because neither Commonwealth nor its subdivisions is a "person" as defined in the MCRA and, to avoid sovereign immunity, "'plaintiff must sue the State official in his individual and not his official capacity'") (internal citation omitted). As to the common law malicious prosecution claim, Howcraft also affirmed the dismissal of an intentional tort claim against the City of Peabody as excluded from the waiver under section 10(c) of the MTCA and, by the same reasoning, dismissed "Howcraft's like claims for damages against the other defendants," i.e., the individual police officers, "in their official capacities." Howcroft v. City of Peabody, 747 N.E.2d at 747 (dismissing intentional infliction of emotional distress claim against city under MTCA, section 10(c), and finding that "like claims for damages against the other defendants in their official capacities were properly dismissed"). All of the malicious prosecution claims against the Fairhaven police officers (Espindola, Myers, Bouvier, Quintin, Kobza, Haaland, Best, and Mello) in their official capacities are therefore subject to dismissal.

Finally, the only argument the Fairhaven defendants make to
dismiss the common law malicious prosecution claim against the
FPD is that the claim is duplicative and, in addition, barred as
another way of pleading an action against the municipality.[27]
(Docket Entry # 11, p. 9).  In presenting the argument, they
overstate the reach of the language in Murphy v. Town of Natick
which reads, "Under both Massachusetts and federal law, a suit
against a municipal police department or its chief (in his or
her official capacity) is deemed to be a suit against the
municipality itself."  Murphy v. Town of Natick, 516 F. Supp. 2d
153, 158-59 (D. Mass. 2007).  Murphy involved only "violations
of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §
201 et seq."  Id. at 156.  The three cases cited to support the
foregoing language and the accompanying parentheticals[28] set out
the well-established principles that a *section 1983* suit against

---

[27]  See footnote 26.

[28]  The complete citations are as follows:

> Henschel v. Worcester Police Dep't, 445 F.2d 624 (1st Cir.
> 1971) ("Henschel") (an action against a police department
> is "the same" as suing the municipality); Monell v. Dep't
> of Soc. Servs. of the City of New York, 436 U.S. 658, 690
> n.55 (1978) ("Monell") (an action against a public officer
> in his or her official capacity is "only another way of
> pleading an action against an entity of which an officer is
> an agent"); Brandon v. Holt, 469 U.S. 464, 471-472 (1985)
> ("Brandon") (a judgment against a public officer in his
> official capacity imposes liability on the municipal
> employer).

Murphy v. Town of Natick, 516 F. Supp. 2d at 158-59.

a municipal employee acting in his official capacity is a suit
"against an entity of which an officer is an agent," Monell, 436
U.S. at 690 n. 55; accord Brandon, 469 U.S. at 471-472 ("a
judgment against a public servant 'in his official capacity'
imposes liability on the entity that he represents"), and that a
police department is not "a suable entity" in a section 1983
suit.  Henschel, 445 F.2d at 624.  Accordingly, Murphy does not
provide a basis to dismiss a common law claim against a
municipal department.  Absent additional authority, the argument
does not provide a means to dismiss the common law malicious
prosecution claim against the FPD.[29]

In sum, the section 1983 and MCRA malicious prosecution
claims against the FPD, the FFD, and the individual police
officers in their official capacities are subject to dismissal.
The common law malicious prosecution claims against the FFD and
the individual officers in their official capacities are also
subject to dismissal.

C.  Espindola, Myers, and Best

The Fairhaven defendants next seek to avoid liability as to
Espindola, Myers, Best, Mello, and Kobza because the complaint

---

[29]  This court is not inviting the FPD to submit additional
authority as a means to revisit or move for reconsideration on
the issue adjudicated in this decision.  Rather, the FPD may
revisit the issue in any further motion, such as a motion for
judgment on the pleadings.  The law set out above shall not
constitute the law of this case vis-à-vis this issue.

does not assert any direct allegations against them.  (Docket
Entry # 11).  With respect to Mello and Kobza, the facts in the
complaint do not support the argument.  Mello's police report
included the falsehood that each of the three witnesses stated
"they were shocked, mortified and felt weird about the event
that took place."  (Docket Entry # 17, p. 36).  Quintin, as the
complainant, signed the application for the criminal complaint.
(Docket Entry # 39-1, p. 34).  Kobza signed the criminal
complaint.  (Docket Entry # 39-1, p. 27) (Docket Entry # 17, p.
35).  Their personal involvement therefore eliminates the basis
for the argument that the complaint is conclusory as to Mello
and Kobza.

As to the Espindola, Myers, and Best, however, the
complaint simply identifies their positions and/or liability for
a breach of duty.  According to the complaint, Espindola,
"Chairman for the 'Town'" of Fairhaven, and Myers, the town's
police chief, were "responsible" for the incident.  (Docket
Entry # 11-1, ¶ 3) (Docket Entry # 17, p. 39).  In opposing
dismissal, plaintiff adds that Espindola, as chairman of the
board of selectmen, "wears many 'hats'" and, when served with
the MTCA presentment letter, "ignored the letter."  (Docket
Entry # 27, p. 3).  As to Best, the complaint simply identifies
her position as a police dispatcher at the FPD who, drawing

reasonable inferences, was the dispatcher for the incident. (Docket Entry # 11-1, ¶ 3).

"In response to a motion to dismiss," a court "must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) (stating that "Plaintiff has alleged facts which, if proved, would amount to a violation of his Fourth Amendment rights" but requiring greater specificity as to each defendant) (emphasis in original). "In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must 'plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. at 678). "In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim 'a plausible entitlement to relief.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. at 678, and Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007)).

Viewing the entire complaint as a whole, it is unclear what, if any role, Espindola, Myers, and Best played in the incident, let alone facts that show their liability for the misconduct regarding the malicious prosecution. The allegation that Espindola and Myers are responsible for the actions taken

against plaintiff is nothing more than an unadorned allegation
that they unlawfully harmed him.  Overall, the complaint lacks
sufficient detail to give Espindola, Myers, and Best fair notice
of grounds upon which the claims against them rest.  See
generally Colón-Fontanez v. Municipality of San Juan, 660 F.3d
17, 46 (1st Cir. 2011) (discussing Fed. R. Civ. P. 8(a)).  The
malicious prosecution claims against Espindola, Myers, and Best
are therefore dismissed in light of the conclusory allegations
posed against them in the complaint.

D.  Kobza, Mello, Bouvier, Quintin, and Haaland

     As a final argument, the Fairhaven defendants maintain that
Kobza, Mello, Bouvier, Quintin, and Haaland are entitled to
qualified immunity as to the MCRA and section 1983 claims.[30]
(Docket Entry # 11).  It is only necessary to address qualified
immunity in relation to the MCRA and section 1983 malicious
prosecution claims inasmuch as the other claims are subject to
dismissal for reasons previously stated.  The Fairhaven
defendants contend that the presence of probable cause was at
least arguable and they otherwise acted in an objectively
reasonable manner.  (Docket Entry # 11).  Plaintiff's failure to
address the qualified immunity of these defendants waives any

---

[30]  Although the Fairhaven defendants also seek qualified
immunity as to Espindola, Myers, and Best, the claims against
these defendants are already subject to dismissal for other
reasons.

argument that they are not entitled to immunity.  See Curet-
Velázquez v. ACEMLA de Puerto Rico, Inc., 656 F.3d 47, 54 (1st
Cir. 2011); Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44
(1st Cir. 2010).

Qualified immunity ordinarily entails a two-step inquiry.
McKenney v. Mangino, 873 F.3d 75, 81 (1st Cir. 2017) (citing
Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017)), cert. denied,
138 S. Ct. 1311 (2018).

> First, the court must determine whether the plaintiff's
> version of the facts makes out a violation of a protected
> right.  Second, the court must determine whether the right
> at issue was clearly established at the time of defendant's
> alleged misconduct.  This second step is itself divisible
> into two components.  To begin, the plaintiff must point to
> controlling authority or a consensus of cases of persuasive
> authority that broadcasts a clear signal to a reasonable
> official that certain conduct falls short of the
> constitutional norm.  Then, the court must evaluate whether
> an objectively reasonable official in the defendant's
> position would have known that his conduct violated that
> rule of law.  These inquiries are carried out with the
> understanding that qualified immunity is meant to shield
> all but the plainly incompetent or those who knowingly
> violate the law.

McKenney v. Mangino, 873 F.3d at 81 (internal citations and
quotation marks omitted).  In presenting the argument, the
Fairhaven defendants assume "a viable civil rights claim" and
rely on the second prong.  (Docket Entry # 11, p. 17).
Accordingly, this court assumes the presence of a plausible
Fourth Amendment violation and examines the clearly established
constitutional rights and whether a reasonable officer would

have known that his conduct violated those rights.  See
generally Wilber v. Curtis, 872 F.3d 15, 21 (1st Cir. 2017)
(assessment of qualified immunity "determine[s] not only whether
the official violated a federal statutory or constitutional
right, but also 'whether the right was "clearly established" at
the time of' the challenged governmental conduct") (internal
citations omitted).  "The 'dispositive inquiry in determining
whether a right is clearly established is whether it would be
clear to a reasonable officer that his conduct was unlawful in
the situation he confronted.'"  Hernandez v. Mesa, 137 S. Ct.
2003, 2007 (2017) (internal citation omitted).

In general, the clearly established right "must be
'particularized' to the facts of the case."  Id. at 82 (quoting
White v. Pauly, 137 S.Ct. 548, 552 (2017) (internal citation
omitted)).  Although an existing case "'"directly on point"'" is
not required "for a right to be clearly established, '"existing
precedent must have placed the statutory or constitutional
question beyond debate."'"  White v. Pauly, 137 S.Ct. at 551
(internal citation omitted).  "What counts is whether precedents
existing at the time of the incident 'establish the applicable
legal rule with sufficient clarity and specificity to put the
official on notice that his contemplated course of conduct will
violate that rule.'"  McKenney v. Mangino, 873 F.3d at 83
(quoting Alfano v. Lynch, 847 F.3d 71, 76 (1st Cir. 2017)).

Stated otherwise, "[t]he test is whether existing case law has 'placed the statutory or constitutional question beyond debate.'"  Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).  "'The same qualified immunity standard that applies under § 1983 has also been held to apply to claims under the MCRA.'"  Wilber v. Curtis, 872 F.3d at 23 (quoting Kelley v. LaForce, 288 F.3d 1, 10 (1st Cir. 2002), in parenthetical).

Before articulating the clearly established rights as of early September 2014, it is helpful to explain a 1983 malicious prosecution claim as it pertains to the probable cause inquiry with respect to a warrantless arrest.  Malicious prosecution "remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process."  Wallace v. Kato, 549 U.S. at 390.  In the context of a warrantless arrest, process typically takes the form of a post-arrest charging document and an arraignment on the charges.  See Harrington v. City of Nashua, 610 F.3d at 30 (in "typical situation, the requisite legal process 'comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)'") (quoting Neives, 241 F.3d at 54); accord Hernandez-Cuevas v. Taylor, 723 F.3d at 100 n.9 (with warrantless arrest, person "is detained without process until, 'for example, he is

bound over by a magistrate or arraigned on charges'") (quoting
Wallace v. Kato, 549 U.S. at 389).   "The proper inquiry is
whether there was probable cause to institute criminal charges
against [the plaintiff] Meehan."   Meehan v. Town of Plymouth,
167 F.3d 85, 90 (1st Cir. 1999).   In this circuit, which adheres
to "a purely constitutional rather than a blended
constitutional/common law approach," the Fourth Amendment is the
applicable constitutional right underpinning a section 1983
malicious prosecution claim.[31]   Hernandez-Cuevas v. Taylor, 723
F.3d at 101.

   A Fourth Amendment section 1983 malicious prosecution claim
succeeds if the plaintiff "can establish that:  'the defendant
(1) caused (2) a seizure of the plaintiff pursuant to legal
process *unsupported by probable cause*, and (3) criminal
proceedings terminated in plaintiff's favor.'"   Id. at 101
(quoting Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012))
(emphasis added).   A section 1983 malicious conspiracy claim
requires the plaintiff to show inter alia "a constitutional
deprivation" or "actual abridgment of some federally-secured
right."   Nieves v. McSweeney, 241 F.3d at 53 (fact that
plaintiff styles claim as "conspiracy to prosecute her
maliciously does not diminish her need to show a constitutional

---

[31]   The complaint appropriately cites the Fourth Amendment.
(Docket Entry # 17, pp. 37-38).

deprivation"); accord Torres-Rosado v. Rotger-Sabat, 335 F.3d 1,
14 (1st Cir. 2003); Grant v. John Hancock Mut. Life Ins. Co.,
183 F. Supp. 2d 344, 359 (D. Mass. 2002) ("it appears that Grant
is contending that there was a [section 1983] conspiracy to
deprive [the plaintiff] of his Fourth and Fourteenth Amendment
rights in connection with his criminal prosecutions" which,
assuming that Grant can establish a claim of malicious
prosecution, "does not rise to the level of a constitutional
violation").  In the context of a warrantless arrest, the Fourth
Amendment section 1983 malicious prosecution and conspiracy
claims therefore each necessitate a showing of a Fourth
Amendment deprivation, namely, "the absence of probable cause to
initiate" the criminal proceedings.  Meehan v. Town of Plymouth,
167 F.3d at 89.

Turning to the existence of clearly established rights, as
of September 2014, it was clearly established in this circuit
that the Fourth Amendment constitutes the applicable
constitutional right covering pretrial seizures without probable
cause, Hernandez-Cuevas v. Taylor, 723 F.3d at 101, and that "a
deprivation of Fourth Amendment rights requires a showing of the
absence of probable cause to initiate proceedings." Meehan v.
Town of Plymouth, 167 F.3d at 89; see Echavarria v. Roach, Civil
Action No. 16-11118-ADB, 2017 WL 3928270, at *8 (D. Mass. Sept.
7, 2017) ("Fourth Amendment right to be free from malicious

prosecution was not clearly established until 2013"); see generally Humbert v. Mayor and City Council of Baltimore City, 866 F.3d 546, 561-62 (4th Cir. 2017) ("Fourth Amendment right to be seized only on probable cause was clearly established" and "law made clear that . . . initiating legal process against a person without probable cause amounts to a seizure in violation of the Fourth Amendment"), as amended (Aug. 22, 2017), cert. denied sub nom. Mayor and City Council of City of Baltimore v. Humbert, 138 S. Ct. 2602 (2018). As indicated, the relevant probable cause is probable cause to initiate the legal process. See Wallace v. Kato, 549 U.S. at 390; Meehan v. Town of Plymouth, 167 F.3d at 91. "Probable cause requires a reasonable belief as opposed to an ironclad one that the individual committed an offense." Cardoso v. City of Brockton, Civil Action No. 12-10892-DJC, 2014 WL 6698618, at *13 (D. Mass. Aug. 11, 2014) (citing Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 11 (1st Cir. 2004)). "The exact degree of certainty required to establish probable cause is difficult to quantify; it falls somewhere between bare suspicion and what would be needed to justify conviction." Burke v. Town of Walpole, 405 F.3d 66, 80 (1st Cir. 2005); accord Cardoso v. City of Brockton, 2014 WL 6698618, at *13.

Clearly established Fourth Amendment rights also prohibited law enforcement officers "'from deliberately fabricating

evidence and framing individuals for crimes they did not

commit.'" Hernandez-Cuevas v. Taylor, 723 F.3d at 100

(describing this concept as "fundamental," quoting Limone v.

Condon, 372 F.3d 39, 44-45 (1st Cir. 2004), and identifying the

source as "Fourth Amendment's guarantee of freedom from seizure

but upon probable cause").   Likewise, it was a clearly

established Fourth Amendment violation if a police officer

submitted evidence, i.e., the witness affidavits or false

information in a police report, "that was not 'believed or

appropriately accepted by the [officer] as true'" to the clerk

magistrate and the information was necessary to the clerk

magistrate's probable cause decision to initiate legal process.

Hernandez-Cuevas v. Taylor, 723 F.3d at 101-02; see Evans v.

Chalmers, 703 F.3d 636, 649-650 (4th Cir. 2012).   Such

information is not truthful when it rises to the level of a

"'deliberate falsehood or reckless disregard for the truth,'"

Hernandez-Cuevas v. Taylor, 723 F.3d at 102, in the sense of a

"high degree of awareness of the probable falsity." Burke v.

Town of Walpole, 405 F.3d at 81 (brackets, ellipses and internal

quotations marks omitted).   It was also clearly established that

this prohibition applied to material omissions. Id.   In

particular, an "intentional or reckless *omission* of material

*exculpatory* facts from information presented to a magistrate" on

the part of a police officer "may . . . amount to a Fourth

Amendment violation." Id. (emphasis added) (citing and
paraphrasing DeLoach v. Bevers, 922 F.2d 618, 622 (10th Cir.
1990), as "upholding verdict for plaintiff where jury could have
inferred that defendant police detective deliberately or
recklessly excluded the exculpatory opinion of an important
medical expert from the affidavit").

When a clerk magistrate makes an independent determination
of probable cause to institute legal process and issue a
criminal complaint, concepts of causation, including an
"intervening act," arise. See Hernandez-Cuevas v. Taylor, 723
F.3d at 100. In such circumstances, a plaintiff must overcome
"this causation problem and demonstrate that law enforcement
officers were responsible for his continued, unreasonable
pretrial detention" in order to state "a constitutional injury
that may be vindicated through a § 1983 action." Id. (citing
Evans v. Chalmers, 703 F.3d at 647).[32] Examples in which a
police officer's prior conduct does not break the causal chain
once a clerk magistrate determines probable cause to institute
the criminal charges include when the officer "(1) 'lied to or
misled the prosecutors,' (2) 'failed to disclose exculpatory

---

[32] The Evans case involved three Duke lacrosse players
wrongfully accused of raping a woman and conduct on the part of
the police and the prosecutor materially and significantly more
egregious than *any* facts alleged in the complaint at bar. See
Evans v. Chalmers, 703 F.3d at 642-645.

evidence' or (3) 'unduly pressured the prosecutor to seek the indictment.'" Id. (quoting Evan v. Chalmers, 703 F.3d 647-48.

Examining the "conduct at issue," Davis v. Murphy, Civil Action No. 13-11900-IT, 2018 WL 1524532, at *9-10 (D. Mass. March 28, 2018) ("[q]ualified immunity focuses on the particular conduct at issue"), in Lee's affidavit, Lee omitted the fact that she did not see plaintiff commit a crime and that Edwards told Lee what to write. Bowden's affidavit also omitted the fact that Edwards told Bowden what to write in Bowden's affidavit. Edwards' affidavit contained falsehoods and omitted that fact that she told Lee and Bowden what to write in their affidavits. Overall, Edwards, Lee, and Bowden provided false affidavits to support the application for a criminal complaint and its issuance by the magistrate-clerk. (Docket Entry # 11-1, ¶¶ 12-15, 17, 25-29, 52). Quintin signed the application for the criminal complaint. (Docket Entry # 39-1, p. 34). Kobza signed the criminal complaint. (Docket Entry # 39-1, p. 27) (Docket Entry # 17, p. 35). Mello's police report included the falsehood that after the "victim[s]" completed the affidavits, they "stated they were shocked, mortified and felt weird about the event," according to the complaint. (Docket Entry # 17, p. 36). None of the individual officers viewed the videotape and thereby knew of its exonerating content except for Bouvier, who saw the videotape at an undetermined time after the arrest and

after he prepared his police report.  (Docket Entry # 11-1, ¶¶ 13, 17, 53, 54).  It is also undisputed that the clerk magistrate found probable cause for the three charges and issued the criminal complaint on September 4, 2014.  (Docket Entry # 17, p. 36) ("magistrate issued the complaint"); (Docket Entry # 39-1, p. 27).

As to Kobza, Quintin, and Haaland, there is nothing to indicate or reasonably infer they objectively knew or had notice that the Stop & Shop employees were lying in their affidavits. Even assuming these officers' objective knowledge of plaintiff's statement to Bouvier to look at the videotape and of plaintiff's statements during the arraignment,[33] their belief that plaintiff committed a crime based on statements from three witnesses is objectively reasonable and, "at most[,] a mistaken judgment." See Nault v. Bazarewsky, 2018 WL 1053315, at *7 (plaintiff failed to show officers knew that other officer "fabricated the claim of assault and battery" and their belief in "the word of a fellow officer over a civilian . . . is at most a mistaken judgment, not a constitutional violation").  They did not review the videotape[34] and, except for plaintiff's statements to Bouvier during the arrest and to the prosecutor during the arraignment,

---

[33]  It is not clear whether Kobza, Quintin, and Haaland attended the arraignment.
[34]  See footnote 11 and related text.

they had no objectively-based reason to doubt the veracity of
the three witnesses.  It is true that Bowden's testimony at the
suppression hearing (Docket Entry # 11-1, ¶ 44) after the clerk
magistrate found probable cause to initiate legal process may
impact Bouvier's credibility.  The testimony, however, does not
plausibly support that the officers deliberately fabricated
evidence and framed plaintiff for crimes he did not commit, see
Hernandez-Cuevas v. Taylor, 723 F.3d at 100, or recklessly
omitted necessary information with a "'high degree of awareness
of [the] probable falsity.'"  Burke v. Town of Walpole, 405 F.3d
at 81 (internal citations omitted).  A reasonable officer would
not have understood that the failure to review and include
information about the content of the videotape, which Bouvier
identified in his police report, was an "intentional or reckless
omission of material exculpatory facts from information
presented to" the clerk magistrate, id., in violation of the
Fourth Amendment.

Moreover, the facts fail to show or reasonably infer that
Kobza, Quintin, and/or Haaland had sufficient reason to doubt
the clerk-magistrate's probable cause finding in initiating
legal process, the witnesses' statements in the affidavits that
supported the finding at the time, or the police reports that
also supported the finding.  See, e.g., Nault v. Bazarewsky,
2018 WL 1053315, at *7 (police officers who did not see assault

66

and battery of the other fellow officer and relied on the fellow officer's word over a civilian entitled to qualified immunity in section 1983 false arrest claim).  As the case proceeded to trial and after issuance of the clerk magistrate's probable cause determination to institute process, the additional information with Bowden's testimony would not alert an objectively reasonable officer that his conduct violated plaintiff's Fourth Amendment rights such that he remained responsible for a prior material omission, evidentiary fabrication, or deliberate falsehood.  Further, a second judge denied a motion to dismiss or to remand the matter to the clerk magistrate for a show cause hearing.  Based on the facts pled in the complaint, there were no reckless or intentional material omissions and/or deliberate falsehoods let alone fabrication of evidence.  Moreover, at least one witness, Edwards, saw the events and prepared an affidavit that, even drawing reasonable inferences in plaintiff's favor, was inculpatory.

Turning to Bouvier, he stated "in his police report [that] he wanted to see the" videotape the next day.  (Docket Entry # 11-1, ¶ 53).  He nevertheless arrested plaintiff and prepared his police report without reviewing the videotape.  (Docket Entry # 11-1, ¶ 13).  At an undetermined time thereafter, Bouvier saw the videotape (Docket Entry # 11-1, ¶ 54), which exonerated plaintiff of the charges (Docket Entry # 17, p. 35)

(videotape "would show no crime took place").  Drawing
reasonable inferences, Bouvier did not inform the prosecutor or
the court that the videotape showed that plaintiff did not
commit the charged offenses.  (Docket Entry # 11-1, ¶ 54).
Although, for example, omitting "crucial exculpatory DNA
evidence [that] was known to the police at the time" may violate
the Fourth Amendment, Burke v. Town of Walpole, 405 F.3d at 83,
a reasonable police officer investigating the existence of a
crime under the circumstances here would not conclude that the
content of the videotape "'was critical to the probable cause
determination.'"  Id. at 81-82 (internal citations omitted).
Three witnesses stated that plaintiff "did a crime," according
to Bouvier, and they all prepared affidavits under oath, which
thereby supported the existence of probable cause.  (Docket
Entry # 11-1, ¶ 12).  Although the complaint depicts the
affidavits as false and the witnesses as liars, the substance of
the "lies" are omissions that Edwards, who witnessed the events,
told Bowden and Lee what to write and that Lee and Bowden did
not see a crime taking place.  There is little, if any,
indication that Bouvier (as well as the other officers) knew
about the omissions or recklessly disregarded information that
created a high degree of awareness of the probable falsity of
the affidavit statements.

In addition, a reasonable officer would not have notice
that his failure to contact the prosecutor after he saw the
videotape violated plaintiff's Fourth Amendment pretrial rights.
The videotape is disclosed in Bouvier's police report and it is
reasonable to believe the prosecutor would review it.  The
disclosure of the videotape's existence in the police report
dispels the notion of an intentional or reckless omission of
exculpatory facts regarding its contents.  At best, the decision
not to alert the prosecutor of the videotape's contents was a
mistake in judgment.  A reasonable officer would not have
understood that such conduct violated the Fourth Amendment's
prohibition against deliberately fabricating or suppressing
material evidence prior to trial.  See Hernandez- Cuevas v.
Taylor, 723 F.3d at 100-01 (Fourth Amendment prohibits
"'deliberately fabricating evidence and framing individuals for
crimes they did not commit'") (internal citation omitted).

In contrast, Mello included facts in his police report that
the victims, i.e., the three Stop & Shop witnesses, "'stated
they were shocked, mortified and felt weird about the event.'"
(Docket Entry # 17, p. 36).  Drawing reasonable inferences in
plaintiff's favor, Mello acted deliberately because the
complaint states that Mello added these "lies."  (Docket Entry #
17, p. 36).  The added statements support the indecent exposure
charge, which "requires 'an intentional act of lewd exposure,

offensive to one or more persons,'" <u>Commonwealth v. Fitta</u>, 461

N.E.2d 820, 822 (Mass. 1984) (internal citation omitted), as

well as possibly the lewd, wanton, and lascivious conduct

charge.  <u>See</u> <u>Commonwealth v. Cahill</u>, 847 N.E.2d 344, 346 (Mass.

2006) (under lewd and lascivious conduct statute, Mass. Gen.

Laws ch. 272, § 53, "Commonwealth has to prove that the

defendant's behavior was offensive and disorderly to a

reasonable person").  Accordingly, a reasonable officer would

recognize that the addition of this false evidence would violate

the Fourth Amendment's prohibition against fabricating evidence

during the pretrial detention time period.  <u>See</u> <u>Hernandez-Cuevas</u>

<u>v. Taylor</u>, 723 F.3d at 100.  The fact that Mello's added

statement regarding the offensive reaction experienced by the

witnesses might be unnecessary for the clerk magistrate's

probable cause finding on the disorderly conduct charge does not

create immunity for the deliberate falsehoods necessary for the

clerk magistrate's probable cause findings on the other two

charges.[35]  Whereas further discovery may lead to a mistaken

---

[35]  The principle that allows probable cause for an arrest on any
crime to foreclose a false arrest claim does not allow probable
cause to institute criminal proceedings for one charge to
foreclose a malicious prosecution claim when other charge(s)
lack such probable cause.  <u>See</u> <u>Holmes v. Vill. of Hoffman</u>
<u>Estates</u>, 511 F.3d 673, 682-83 (7th Cir. 2007).  In the latter
circumstance when multiple charges exist, "the basis for each
charge must be examined separately."  <u>Id.</u> at 682 (finding this
argument by plaintiff "correct" and discussing case law at
length).

belief or that the witnesses actually made these statements, at present the complaint reflects that Mello knew these necessary statements were false and nevertheless included them in his police report.  Accordingly, qualified immunity is denied as to Mello at this point in the proceedings.

III.  <u>The Commonwealth</u>

The Commonwealth initially seeks to dismiss the claims against it based on sovereign immunity.  (Docket Entry # 35). Assuming without conceding that the prosecutors and "District Attorney for Bristol County Thomas Quinn[]" (henceforth "the prosecutors") referenced in the complaint (Docket Entry # 11-1, ¶ 5) are named defendants, the Commonwealth likewise moves to dismiss the claims against the prosecutors in their official capacity on the basis of sovereign immunity.  (Docket Entry # 35).  Relatedly, the Commonwealth submits that the MTCA exempts intentional torts from the statute's waiver of its sovereign immunity thus precluding the malicious prosecution claim. (Docket Entry # 35, p. 9).  The Commonwealth next maintains that neither the Commonwealth nor the prosecutors in their official capacities is a "person" within the meaning of section 1983 or the MCRA.  In addition to an untimely presentment under the MTCA, the Commonwealth contends that the prosecutors receive absolute immunity for their conduct.  (Docket Entry # 35).

Plaintiff disagrees that any immunity applies.  (Docket Entry # 37).  In addition to other arguments, plaintiff asserts that the Commonwealth and the prosecutors are as liable as the other defendants in part because the prosecutors did not correct the judge in his or her belief that Lee was a corroborating witness with Edwards even though Lee did not witness the incident.  (Docket Entry # 37).

As an aside, the Commonwealth maintains this court should address the Rule 12(b)(1) sovereign immunity argument "first because, 'if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest.'"  (Docket Entry # 35, pp. 7-8) (quoting Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149-50 (1st Cir. 2002)). To the contrary, however, "'it is well-established under First Circuit precedent that federal courts may resolve a case on the merits in favor of a state without first resolving any Eleventh Amendment issues the state raises.'"  Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105 (1st Cir. 2015) (quoting Brait Builders Corp. v. Mass., Div. of Capital Asset Mgmt., 644 F.3d 5, 11 (1st Cir. 2011)).  Accordingly, this court initially turns to the Commonwealth's other arguments.

First, the Commonwealth as well as the prosecutors in their official capacities are not "persons" within the meaning of section 1983.  Hafer v. Melo, 502 U.S. 21, 25-26 (1991); Will v.

Michigan Dep't of State Police, 491 U.S. 58, 62-70, 71 (1989)
("neither a State nor its officials acting in their official
capacities are 'persons' under § 1983"); Lundgren v.
Occupational Safety & Health Admin., 324 F. Supp. 3d 238, 242
(D. Mass. 2018) ("State agencies and state officials acting in
the [sic] their official capacity, such as the MPDH and Pechter,
are not amenable to suit under § 1983"); Collymore v.
Massachusetts, Civil Action No. 18-11215-LTS, 2018 WL 3466939,
at *1 (D. Mass. July 18, 2018) (Commonwealth "and Donovan in
their official capacities are not persons pursuant to 42 U.S.C.
§ 1983").  The section 1983 claims against the Commonwealth and
the prosecutors in their official capacities are therefore
subject to dismissal.

The MCRA similarly imposes liability and provides a remedy
against "any person or persons."  Mass. Gen. Laws ch. 12, §§
11H, 11I.  The applicable definition of a "person" or "persons"
does not include the Commonwealth and its agencies.  Williams v.
O'Brien, 936 N.E.2d 1, 4 (Mass. App. Ct. 2010); Howcroft v. City
of Peabody, 747 N.E.2d at 744 (citing Mass. Gen. Laws ch. 4, §
7); Mass. Gen. Laws ch. 4, § 7 (term "[p]erson . . . shall
include corporations, societies, associations and
partnerships").  Public officials, such as the prosecutors,
acting in their official capacity are also not encompassed
within the term "person or persons."  Muldoon v. Dep't of Corr.,

Civil Action No. 15-13892-DJC, 2017 WL 506250, at *3 (D. Mass.
Feb. 7, 2017) (dismissing MCRA claim "against Higgins, O'Brien,
Medeiros and Baker in their official capacities, . . . because
these defendants do not qualify as 'persons' under the MCRA")
(citations omitted); Howcroft v. City of Peabody, 747 N.E.2d at
745 (affirming summary judgment in favor of police officers in
their official capacities because neither the Commonwealth, nor
any of its political subdivisions are "persons" within the
meaning of the MCRA).  Hence, the MCRA claims against the
Commonwealth and the prosecutors in their official capacities
are subject to dismissal.

Second, as previously discussed, the MTCA exempts
intentional torts from the statute's waiver of sovereign
immunity for claims against a "public employer," a term that
includes "the commonwealth."   Mass. Gen. Laws ch. 258, §§ 1, 2,
10(c).  The Commonwealth is therefore not subject to suit under
the MCRA for the intentional tort of malicious prosecution.
Mass. Gen. Laws ch. 258, § 10(c) (including "malicious
prosecution" as "an intentional tort").  By extension, the
statute similarly bars recovery against public officials in
their official capacities for intentional torts.  Cummings v.
City of Newton, 298 F. Supp. 3d 279, 291 n.3 (D. Mass. 2018)
(MTCA "bars recovery against . . . municipal officials in their
official capacity for 'any claim arising out of an intentional

74

tort'") (quoting Mass. Gen. Laws ch. 258, § 10(c)); Hankey v.
Town of Concord-Carlisle, 136 F. Supp. 3d 52, 74 (D. Mass. 2015)
(allowing summary judgment in favor of individual defendants in
their official capacities because MTCA exempts intentional torts
from waiver of sovereign immunity); Mass. Gen. Laws ch. 258, §
10(c).  As correctly posited by the Commonwealth, the MTCA does
not waive the Commonwealth's immunity for intentional torts and
the common law malicious prosecution claims against the
Commonwealth and the prosecutors in their official capacities
are therefore subject to dismissal.

Turning to the remaining claims against the prosecutors in
their individual capacities, the Commonwealth relies on their
absolute immunity to avoid liability.  Plaintiff contends the
prosecutors are liable because they refused to exercise their
authority to nolle prosequi the matter and intentionally did not
correct the judge in his or her mistaken belief that one or more
of the witnesses was a corroborating witness.

"State prosecutors are entitled to absolute immunity from
liability under § 1983 to the extent that such immunity is
'necessary to protect the judicial process.'"  Filler v.
Kellett, 859 F.3d 148, 152–53 (1st Cir. 2017) (quoting Burns v.
Reed, 500 U.S. 478, 485 (1991)).  This absolute immunity
pertains only to "'actions that are connected with the
prosecutor's role in judicial proceedings.'"  Id. at 153

(quoting Burns v. Reed, 500 U.S. at 494).  A prosecutor therefore receives "absolute immunity when functioning as an 'advocate' for the state in 'initiating a prosecution and in presenting the State's case.'" Id. (quoting Imbler v. Pachtman, 424 U.S. 409, 431 (1976)).  In contrast, qualified as opposed to absolute immunity applies when the prosecutor is "acting 'in the role of an administrator or investigative officer.'"  Id. (quoting Imbler, 424 U.S. at 430-431.  Accordingly, this court turns to the complaint as a whole to determine the nature of the prosecutors' role and alleged misconduct.

Overall, the complaint asserts that Lee and Bowden lied in their affidavits because they did not witness the events and did not disclose in their affidavits that Edwards instructed them what to write.  Further, with the exception of Bouvier, neither the police officers nor the prosecutors reviewed the videotape which showed that plaintiff did not commit a crime, including any of the charged offenses.  Instead of viewing the exonerating videotape, the prosecutors continued to prosecute the charges rather than nolle prosequi the matter for the next two and a half years until the April 2017 trial.  (Docket Entry # 11-1, ¶¶ 34, 55) (Docket Entry # 17, pp. 36-37).  Putting aside the conclusory language in the complaint of a "conspiracy" and coercion, see Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012) ("conclusory statements must rest on pleaded facts"

rather than "legal boilerplate" such as a "'conspiracy,'"), the prosecutor's role includes going forward with the charges after plaintiff shouted at the prosecutor "that the charges were false" during the arraignment. (Docket Entry # 11-1, ¶ 27). In addition to the prosecutor's actions at the arraignment, he or she failed to correct the judge by advising the judge of the false statements in Lee's affidavit. (Docket Entry # 11-1, ¶ 34). The prosecutor also failed to dismiss the case when Bowden later admitted in another hearing "that he did not see any crime done by the plaintiff and that Marilyn Edwards told him and Michelle Lee what to say and do." (Docket Entry # 11-1, ¶¶ 40, 44). At trial, the prosecutor called Edwards, as opposed to either of the other two witnesses, to the stand as well as one police officer. Edwards proceeded to recite additional lies, namely, that a previously unidentified Stop & Shop employee could corroborate her version of the events. (Docket Entry # 11-1, ¶¶ 48-49). The prosecutor also played the videotape at the trial, at which point the judge "saw no crime" and "[t]he trial ended." (Docket Entry # 11-1, ¶¶ 56, 57).

The foregoing misconduct, if any, is therefore "connected" to "the prosecutor's role in judicial proceedings." <u>Filler v. Kellett</u>, 859 F.3d at 153. As explained by the First Circuit in an earlier case:

> [U]nder *Imbler* it is now a well-settled rule that a
> prosecutor cannot be held personally liable for the knowing
> suppression of exculpatory information.   The *Imbler* rule
> has been applied where prosecutors failed to disclose
> exculpatory evidence specifically requested by the defense,
> and where prosecutors misled the trial court in order to
> conceal their failure to disclose exculpatory evidence.

Reid v. State of N.H., 56 F.3d 332, 336–37 (1st Cir. 1995)

(quotations marks, citations, and brackets omitted).   The facts

do not infer involvement on the part of the prosecutor in making

the arrest during that investigative phase or any involvement by

the prosecutor in preparing the false affidavits or Mello's

false statements in Mello's police report.   The prosecutor's

decision not to view the videotape or to view the videotape and

then not nolle prosequi the case after plaintiff's declaration

at the arraignment falls well within the scope of his or her

absolute immunity and his or her conduct as an advocate for the

state.   See id. at 337 (when "prosecutor evaluates evidence" in

preparing for trial, "he functions within the scope of absolute

immunity") (summarizing Buckley v. Fitzsimmons, 509 U.S. 259,

273-74 (1993), in parenthetical); see also Filler v. Kellett,

859 F.3d at 153 ("prosecutor has absolute immunity when

functioning as an 'advocate' for the state) (internal citation

omitted).   Without facts indicating that the prosecutor assisted

in the initial preparation of the false affidavits or the false

statements in Mello's police report in investigating the matter,

the prosecutors retain their absolute immunity even where, as

78

here, the "cooperating witnesses lie." Diaz-Colon v. Fuentes-Agostini, 786 F.3d 144, 151 (1st Cir. 2015).  The prosecutor is also not vicariously liable "for the misconduct of others in the previous procuring of the false statements."  Id.

In sum, the common law, section 1983, and MCRA malicious prosecution claims against the Commonwealth and the prosecutors in their official and their individual capacities are subject to dismissal.

III.  Edwards, Lee, and Bowden

In seeking to dismiss the complaint, the Stop & Shop employees first contend that the claims are time barred.  For reasons already explained, the claims are time barred except for the common law, section 1983, and MCRA malicious prosecution claims.  Second, they argue that the complaint fails to set forth any basis showing an entitlement to relief against them because the civil rights violations are directed against other defendants.  The "unintelligible assertions" are also not actionable or "supported by any meritorious legal theory of recovery," according to the Stop & Shop employees.  (Docket Entry # 14).  As a result, they maintain that the complaint does not comply with Fed. R. Civ. P. 8(a)(2) ("Rule 8(a)(2)") and warrants a dismissal under Rule 12(b)(6).

As previously stated, "[i]n order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must 'plead [] factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Sanchez v. Pereira-Castillo, 590 F.3d at 48 (also stating that court "must determine whether" complaint is sufficient as to each defendant) (internal citation omitted).  Whereas Rule 8(a)(2) requires "'a short and plain statement of the claim,'" the "statement must 'possess enough heft to show that the pleader is entitled to relief.'"  Colón-Fontánez v. Municipality of San Juan, 660 F.3d at 46 (internal citations omitted).  Here, the complaint alleges that Lee and Bowden falsely stated in their affidavits that they saw the incident and neglected to disclose that Edwards told them what to write.  Edwards' affidavit also omitted that fact that she told Lee and Bowden what to write in their affidavits.  Edwards, Lee, and Bowden provided the affidavits to support the application for a criminal complaint and its issuance by the magistrate-clerk. (Docket Entry # 11-1, ¶¶ 12-15, 17, 25-29, 52).

With respect to the common law malicious prosecution claim, liability entails a showing that Edwards, Lee, and/or Bowden "'initiated' or 'took an active part in the continuation of' the criminal proceedings," Mitchell v. City of Boston, 130 F. Supp. 2d at 215, which terminated in plaintiff's favor at the trial. Providing information to the police who then make an independent determination to apply for a criminal complaint "'does not

80

constitute a procurement of the proceedings'" when the police are left with "'the uncontrolled choice'" to bring the proceedings.  Id. (quoting Restatement (Second) of Torts § 655, cmt. d (1977)).  In seeking a dismissal of the claims, however, the Stop & Shop employees do not raise or address the elements of their liability for malicious prosecution under the common law or a malicious prosecution section 1983 claim.  See Briscoe v. LaHue, 460 U.S. 325, 326 (1983); Watterson v. Page, 987 F.2d 1, 9 (1st Cir. 1993); Mitchell v. City of Boston, 130 F. Supp. 2d at 209.  Rather, they proffer a general argument that all of the claims are deficient because they are unintelligible and are not directed at them.  Accordingly, given the nature of the argument, the Stop & Shop employees waived the assertion that the facts in the complaint did not plausibly allege a particular element of the malicious prosecution claim.  See Coons v. Indus. Knife Co., Inc., 620 F.3d at 44.  They also waived any reliance on absolute immunity of a complaining witness as a basis to dismiss the section 1983 malicious prosecution claim.[36]  Id.

As a whole, the pro se complaint gives the Stop & Shop employees "'fair notice of the claim[s] and the grounds upon which'" the claims rest.  Colón-Fontánez v. Municipality of San Juan, 660 F.3d at 46 (quoting Ocasio-Hernández v. Fortuño-

---

[36]  The waiver extends *only* to the present motion and does *not* foreclose a Rule 12(c) motion based on such arguments.

Burset, 640 F.3d 1, 8 (1st Cir. 2011)).  It sets out the nature
of the Stop & Shop employees' conduct of submitting affidavits
with false statements, which supported the application for the
criminal complaint and the determination of probable cause for
the charges.  It identifies the three employees as responsible
for the actions against plaintiff, which include charging
plaintiff with the three offenses, and explicitly refers to
malicious prosecution as one of the causes of action.  (Docket
Entry # 17, pp. 38-40).  Although not a model of clarity, the
complaint adequately identifies the asserted misconduct of each
of the Stop & Shop employees and raises common law, MCRA, and
section 1983 malicious prosecutions claims as well as the
section 1983 malicious prosecution conspiracy claim.
Accordingly, it is not subject to dismissal based on the Stop &
Shop employees' second argument.

IV.  <u>Consumer Affairs/Giant Food, LLC</u>

Consumer Affairs/Giant Food moves to dismiss the complaint
under Rules 12(b)(6), 12(b)(4), and 12(b)(5).  (Docket Entry #
41).  The Rule 12(b)(6) argument adopts the arguments made by
the Stop & Shop employees and Stop & Shop in their Rule 12(b)(6)
motions to dismiss (Docket Entry ## 14, 31), including the
untimeliness of the claims.  (Docket Entry # 41).  In support of
the insufficient process with a defective summons and the
insufficient service arguments seeking to dismiss the complaint

under Rules 12(b)(4) and 12(b)(5), Consumer Affairs/Giant Food submits an affidavit which explains that "Consumer/Affairs/Giant Food LLC" does not exist. (Docket Entry # 41, p. 5) (Docket Entry # 41-1).

Prior to the August 10, 2018 filing of Consumer Affairs/Giant Food's motion, plaintiff filed a request for a "default" against Consumer Affairs/Giant Food on July 2, 2018. (Docket Entry # 28). In response to the identification of Giant Food LLC's location as Landover, Maryland in the affidavit, plaintiff states he "will serve these defendants." (Docket Entry # 46).

BACKGROUND

The complaint identifies "Consumer Affairs/Giant Food LLC" as the named defendant (Docket Entry # 11-1, ¶ 4) with an address of 8301 Professional Place, Suite 115, in "Hyattsville Landover, Maryland." (Docket Entry # 17, p. 30). On April 18, 2018, the state court waived the filing fee and the cost of serving the summons and the complaint in light of plaintiff's affidavit of indigency. (Docket Entry # 17, pp. 5, 52-53). Plaintiff accomplished service on a number of defendants but did not serve Consumer Affairs/Giant Food LLC or non-party Giant

Food LLC prior to the May 24, 2018 notice of removal.[37]   (Docket Entry # 17, pp. 5-7).

Plaintiff initially attempted to serve Consumer Affairs/Giant Food LLC in May 2018 by asking the Office of the Sheriff of Prince George's County in Maryland to serve the complaint and summons.  (Docket Entry # 25, pp. 5-6).  The sheriff's office refused to undertake service and returned the papers to plaintiff in letters dated May 2 and 21, 2018 because plaintiff did not pay a service fee.  (Docket Entry # 25 pp. 6, 8).  Plaintiff then attempted service by certified mail at an undetermined time.  (Docket Entry # 25, p. 9).  Specifically, he sent the summons directed to "Cons/Affa/Giant Food LLC" by certified mail to Consumer Affairs/Giant Food LLC, as opposed to an individual, at the aforementioned Hyattsville Landover,

---

[37]  Having reviewed the state court record, it does not include a summons directed to Consumer Affairs/Giant Food LLC or Giant Food LLC or a return of service from either entity.  (Docket Entry # 17).  The state court docket sheet also does not reflect a summons or a return of service for these entities.  In the motion for a default judgment against Stop & Shop, plaintiff includes a summons on a state court form directed to "Cons/Affa/Giant Food LLC."  (Docket Entry # 25, p. 10).  The summons does not reflect a stamp as filed in state court. (Docket Entry # 25, p. 10).  All of the summons in the state court record, which are directed against other defendants, include such stamps.  (Docket Entry # 17, pp. 54-73, 84-85, 130-133, 141-142).  A summons directed to Giant Food LLC lists the state and federal docket entry numbers.  (Docket Entry # 46, p. 3).  The aforementioned affidavit explains that although Giant Food LLC does exist and is located in Maryland, it does not operate the store where the incident took place.  (Docket Entry # 41-1).

Maryland address.  Plaintiff also filed a signed receipt with a June 8, 2018 date of delivery together with the summons.  The signature is not legible and the signee did not check either of the applicable boxes for "agent" or "addressee." (Docket Entry # 25, p. 9).

On July 2, 2018, plaintiff filed a "request for default" against Consumer Affairs/Giant Food LLC stating that it "was served on" June 8, 2018. (Docket Entry # 28).  The June 8, 2018 return receipt does not identify the signee. (Docket Entry # 25, p. 9).  The Clerk did not act on the request.

In an affidavit filed on August 10, 2018, Senior Counsel of an affiliate of Stop & Shop attests that the entity referred to as Consumer/Affairs/Giant Food LLC "does not exist." (Docket Entry # 41-1).  It is therefore reasonable to conclude that the entity referred to as Consumer Affairs/Giant Food LLC also does not exist.  Senior Counsel further avers that "'Giant Food LLC' is based in Landover, Maryland and does not operate the Stop and Shop store" in Fairhaven where the incident took place. (Docket Entry # 41-1).

In light of this information, on July 24, 2018, plaintiff sent a summons directed to Giant Food LLC by certified mail to Giant Food LLC, as opposed to an individual, to the same Hyattsville Landover, Maryland address. (Docket Entry # 46). Plaintiff also filed an undated, signed return receipt together

with the summons.  (Docket Entry # 46, pp. 2-3).  Here again,
the signature is not legible and the signee does not check
either of the applicable boxes for "agent" or "addressee."
(Docket Entry # 46, p. 2).

### DISCUSSION

In order to "exercise personal jurisdiction over a
defendant, the procedural requirement of service of summons must
be satisfied." Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,
Ltd., 484 U.S. 97, 104 (1987); see Vázquez-Robles v. CommoLoCo,
Inc., 757 F.3d 1, 4 (1st Cir. 2014) ("jurisdiction normally
depends on legally sufficient service of process").  There is
insufficient evidence that Consumer Affairs/Giant Food LLC
consented to service or waived the issue.  See Omni Capital
Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. at 104 (noting
that, "[a]bsent consent, . . . there must be authorization for
service of summons on the defendant"); Lechoslaw v. Bank of Am.,
N.A., 618 F.3d 49, 55 (1st Cir. 2010) (addressing waiver).
Exercising this court's discretion, this court turns to the
service of process issue before reaching, if necessary, the
plausibility of the complaint under Rule 12(b)(6).  See Ruhrgas
AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999) ("[i]t is
hardly novel for a federal court to choose among threshold
grounds for denying audience to a case on the merits").

Where, as here, "a defendant seasonally challenges the adequacy of service, the plaintiff has the burden of showing that service was proper." Vazquez-Robles v. CommoLoCo, Inc., 757 F.3d at 4. Factual ambiguities are "resolved squarely in the plaintiff's favor." Morse v. Massachusetts Executive Office of Public Safety, Civil Action No. 12-40160-TSH, 2013 WL 1397736, at *1 (D. Mass. April 4, 2013).

The Federal Rules of Civil Procedure apply to the attempt to serve Consumer Affairs/Giant Food LLC after the May 24, 2018 removal notice.[38] See Fed. R. Civ. P. 81(c)(1) ("[t]hese rules apply to a civil action after it is removed from a state court"); Egan v. Tenet Health Care, 193 F. Supp. 3d 73, 79 (D. Mass. 2016) ("sufficiency of service made *after* removal of an action from state court is governed by the Federal Rules of Civil Procedure"). Under Fed. R. Civ. P. 4(h) ("Rule 4(h)"), service on a corporation is allowed:  (1) "in the manner prescribed by Rule 4(e)(1) for serving an individual; or" (2)

---

[38] Because plaintiff attempted unsuccessfully to serve Consumer Affairs/Giant Food LLC in May 2018 before the May 24, 2018 removal notice, Massachusetts service rules potentially apply. Applying those rules as an alternative basis to allow the motion, the sheriff's office in Maryland that plaintiff contacted did not attempt to serve Consumer Affairs/Giant Food LLC and returned the papers to plaintiff. (Docket Entry # 25, pp. 5-8). Hence, plaintiff's contacts with the sheriff's office do not accomplish service. In addition and for reasons discussed below, Massachusetts law does not allow service by certified mail in the manner attempted by plaintiff.

"by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1).  The latter method, see Fed. R. Civ. P. 4(h)(1)(B), "requires personal service" as opposed to service by mail.  Auctus Private Equity Fund, LLC v. First Columbia Gold Corp., Civil Action No. 17-10543-ADB, 2018 WL 3146727, at *2 (D. Mass. Jan. 11, 2018) (collecting authorities).  Hence, certified mail is not an acceptable means of service under Fed. R. Civ. P. 4(h)(B).  Id. ("[p]laintiff's attempts to serve process by certified mail are insufficient under Federal Rule of Civil Procedure 4(h)").  Accordingly, plaintiff fails to show proper service under Rule 4(h)(1)(B).

Turning to state law, service must comply with either Massachusetts or Maryland law.  Fed. R. Civ. P. 4(h)(1)(A) (allowing service in accordance with Rule 4(e)(1)); Fed. R. Civ. P. 4(e)(1) (allowing service in accordance with "state where the district court is located or where service is made").  With respect to foreign corporations, Massachusetts law allows service by mail subject to certain parameters.  See Mass. R. Civ. P. 4(e).  In particular, "Massachusetts law requires that, in the case of a corporation, service be made on 'the president, treasurer, clerk, resident agent appointed pursuant to section 49 of chapter 156D, cashier, secretary, agent or other officer

in charge of its business, or, if no such officer is found . . .
any member of the corporation.'" Crossetti v. Cargill, Inc.,
Civil Action No. 3:18-30002-KAR, 2018 WL 2770130, at *2 (D.
Mass. June 8, 2018) (quoting Mass. Gen. Laws ch. 223, § 37, and
assessing plaintiff's service by certified mail on foreign
corporation), appeal filed, No. 18-1622 (1st Cir. July 2, 2018).
Service is invalid where, as here, "the mail is addressed to a
corporation rather than one of the statutorily-designated
individuals." Id. (collecting Massachusetts state court cases
and applicable statutes). Service is also deficient under Mass.
R. Civ. P. 4(d)(2). Massachusetts Rule of Civil Procedure
4(d)(2) "applies to personal delivery of process" and does not
apply to "service by mail," id. at *3, which is the method
plaintiff used.

Maryland law allows service on a corporation "in person, by
mail, or, in some circumstances, through substituted service
upon the State Department of Assessments and Taxation." Varieur
v. BIS Glob., Civil Action No. PX 16-3111, 2017 WL 1133708, at
*2 (D. Md. March 27, 2017) (citing applicable Maryland
statutes). Service by mail is accomplished by sending "a copy
of the summons and complaint to . . . the 'resident agent,
president, secretary, or treasurer' of the organization via
'certified mail requesting:  "Restricted Delivery—show to whom,
date, address of delivery."'" Alston v. Fed. Nat'l Mortg.

Ass'n, Seterus, Inc., Civil Action No. TDC-17-2938, 2018 WL
2938909, at *3 (D. Md. June 12, 2018); accord Duncan v. U.S.
Bank Nat'l Ass'n, Case No. PWG-17-3506, 2018 WL 2183392, at *2
(D. Md. May 11, 2018); see Md. Rule 2-121(a)(3).  In the event a
"corporate defendant 'has no resident agent, or if a good faith
attempt to serve the resident agent, president, secretary, or
treasurer has failed, service may be made by serving the
manager, any director, vice president, assistant secretary,
assistant treasurer, or other person expressly or impliedly
authorized to receive service of process.'"  Varieur v. BIS
Glob., 2017 WL 1133708, at *2 (internal citation omitted).
Here, plaintiff fails to show that the signee was a registered
agent, president, secretary, or treasurer of Consumer
Affairs/Giant Food LLC.  There is also no showing that the
certified mail plaintiff sent to Consumer Affairs/Giant Food LLC
requested restricted delivery.  See Alston v. Fed. Nat'l Mortg.
Ass'n, Seterus, Inc., 2018 WL 2938909, at *3 ("[p]laintiffs'
failure to request restricted delivery renders the service
defective for each Defendant").

The same deficiencies of service apply to plaintiff's
attempt to properly serve Giant Food LLC, even assuming the
complaint names this entity as a defendant.  Plaintiff, who
filed this action on April 11, 2018, therefore fails to

accomplish proper service on either Consumer Affairs/Giant Food LLC or Giant Food LLC.

More than 90 days has elapsed since plaintiff filed the complaint.  A showing of good cause is therefore required.  See Fed. R. Civ. P. 4(m).  Whereas it appears Consumer Affairs/Giant Food LLC has actual notice of the litigation, plaintiff is not incarcerated and there is no impediment hindering him from accomplishing proper service.  See Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 321 (1st Cir. 2009) (litigants' "pro se status did not relieve them of their responsibility to comply with procedural rules").  In seeking to show good cause, Local Rule 4.1 requires plaintiff to file a motion for an "enlargement of time under Fed. R. Civ. P. 6(b), together with a supporting affidavit" no later than 14 days after the expiration of the 90-day time period.  LR. 4.1(b).  Plaintiff did not file a motion for an extension of time under Fed. R. Civ. P. 6(b) or a supporting affidavit.  By identifying the party to be served as Consumer Affairs/Giant Food LLC, a nonexistent entity, it is also debatable whether plaintiff provided the information necessary for the sheriff's office in Prince George's County to effectuate service.  Accordingly, in lieu of extending the time to accomplish service, a dismissal of Consumer Affairs/Giant

Food LLC without prejudice is appropriate.[39]  See Fed. R. Civ. P. 4(m) (absent good cause, court "must dismiss the action without prejudice").

V.  Stop & Shop

Stop & Shop seeks to set aside the entry of default entered in state court on the basis that it acted promptly as opposed to willfully or in bad faith and has a meritorious defense.  Stop & Shop further submits there is an absence of prejudice, the amount of money involved is significant, and the failure to respond is due to a clerical mistake.  (Docket Entry # 19).  In response, plaintiff moves for a default judgment and opposes setting aside the default.  (Docket Entry ## 22, 25, 44).

BACKGROUND

The facts are straight forward.  On June 5, 2018, plaintiff filed a return of service for Stop & Shop in state court and requested a default against Stop & Shop.  (Docket Entry # 17, pp. 7, 130-131, 135).  Signed by a deputy sheriff, the return certifies that he served the summons, the complaint, and other documents on Stop & Shop at 1385 Hancock Street in Quincy, Massachusetts on April 30, 2018.  (Docket Entry # 17, pp. 130-131).  The deputy sheriff states that he delivered the foregoing documents "in hand to Esther Guererro" ("Guererro"), a

---

[39]  It is therefore not necessary to address Consumer Affairs/Giant Food LLC's other arguments in favor of dismissal.

receptionist and the "person in charge at the time of service for [Stop & Shop]." (Docket Entry # 17, p. 131).

Massachusetts law required Stop & Shop to file a responsive pleading 20 days after service. Mass. R. Civ. P. 12(a)(1). In light of Stop & Shop's failure to file a responsive pleading in a timely manner, the state court entered a default on June 5, 2018 under Mass. R. Civ. P. 55(a). (Docket Entry # 17, pp. 7, 135-136). The next day, the Fairhaven defendants filed a notice of removal in state court.

Geurrero, an employee of Retail Business Services which provides administrative and legal support to Stop & Shop, worked "as a receptionist in the Department of Office Services" at the above location on April 30, 2018. (Docket Entry # 19-1). She does not remember signing for the documents but explains it is company policy and her regular practice to: (1) sign for legal documents; (2) bring the documents to the legal department in the building; or (3) request that a paralegal in the legal department sign the documents. (Docket Entry # 19-1). A paralegal employed by Retail Business Services at the same location attests it was company policy and her regular practice as of April 30, 2018 to receive any legal documents presented to her and to forward "documents concerning tort litigation against [Stop & Shop] to MAC Risk Management." (Docket Entry # 19-2). MAC Risk Management handles tort litigation brought against Stop

& Shop.  (Docket Entry # 19-2).  The paralegal has no specific

memory of receiving the documents on April 30, 2018 or

forwarding them to MAC Risk Management.  (Docket Entry # 19-2).

## DISCUSSION

The state court entered the default 12 days after the

notice of removal filed in this court on May 24, 2018.  Prior to

the June 6, 2018 notice of removal filed in state court, the

state court retained concurrent jurisdiction with "the federal

court," which "attaches as soon as the petition for removal is

filed" in the federal court.  Berberian v. Gibney, 514 F.2d 790,

792-93 (1st Cir. 1975).  The default entered in state court was

therefore effective.  Id.  "'The effect of the default'" is also

"'the same as if it had been entered by [this] court upon

failure of [the defendants] to answer a complaint originally

filed there.'"  Sindi v. El-Moslimany, Civil Action No. 13-

10798-GAO, 2014 WL 1281522, at *2 (D. Mass. March 26, 2014)

(quoting Berberian v. Gibney, 514 F.2d at 792).  As a result,

the state default is treated as if "entered by this Court" and

Fed. R. Civ. P. 55(c) ("Rule 55(c)") applies.  Id.; accord

Berberian v. Gibney, 514 F.2d at 793 (applying Rule 55(c) to

determine whether to set aside default entered in state court

after removal notice filed in federal court and prior to notice

of removal filed in state court).

Under Rule 55(c), a court may set aside an entry of default
for "good cause." Fed. R. Civ. P. 55(c). The "standard is a
'liberal one' based upon the policy justification that actions
should be resolved on their merits." Bryan v. Lark Hotels, LLC,
323 F.R.D. 116, 117 (D. Mass. 2017) (quoting Coon v. Grenier,
867 F.2d 73, 76 (1st Cir. 1989)). Factors to consider include:
"(1) whether the default was willful; (2) whether setting it
aside would prejudice the adversary; and (3) whether a
meritorious defense is presented." Indigo Am., Inc. v. Big
Impressions, LLC, 597 F.3d 1, 3 (1st Cir. 2010) (internal
citations omitted). A court may also assess "'"(4) the nature
of the defendant's explanation for the default; (5) the good
faith of the parties; (6) the amount of money involved; [and]
(7) the timing of the motion [to set aside the entry of
default]."'" Id. (quoting KPS & Assocs., Inc. v. Designs by
FMC, Inc., 318 F.3d 1, 12 (1st Cir. 2003)).

Within eight days of the docketing of the notice of
default, Stop & Shop filed the motion to set it aside. It acted
promptly in seeking to set aside the default and the complaint
seeks a large sum of money totaling $2,000,000 from all
defendants. (Docket Entry # 19) (Docket Entry # 17, p. 40).
Stop & Shop has a plausible defense, namely, the untimeliness of
the claims with the exception of the malicious prosecution
claims. Prejudice is absent because "simply requiring a party

to litigate the action does not amount to prejudice," and there
is no indication that memories of witnesses "have dimmed beyond
refreshment." Coon v. Grenier, 867 F.2d at 77 (paraphrasing
United States v. One Parcel of Real Property, 763 F.2d 181, 183
(5th Cir. 1985), in parenthetical).  Stop & Shop did not evade
service inasmuch as it has a policy in place that ordinarily
operates to effectuate service and the default more than likely
resulted from a mistake or oversight on the part of Guerrero
after the April 30, 2018 hand delivery of the summons and
complaint.  Although plaintiff insists that Stop & Shop's
counsel is a "great man[i]pulator" and complains that she does
"not acknowledge" the timeliness of the malicious prosecution
claims (Docket Entry # 22), there is nothing willful in pressing
a weak argument as an advocate for a client.  On the present
record, this court finds that Stop & Shop did not willfully
evade service, see generally Coon v. Grenier, 867 F.2d at 76
(discussing willfulness), or act in bad faith.  The balance of
factors coupled with the preference to decide cases on their
merits justifies setting aside the notice of default.  Similar
reasons warrant denying plaintiff's motion for a default
judgment against Stop & Shop (Docket Entry # 44).  See Palmieri
v. Town of Babylon, 2008 WL 1994996, at *2 (2d Cir. May 7, 2008)
(stating that Rule 55(c) factors considered in setting aside a
default "counsel in favor of affirming the district court's

decision to deny the motion for default judgment in this case")
(unpublished).

VI.  Store 427 and SSNE

As a final matter, Stop & Shop moves to dismiss the
complaint as to Consumer/Affairs/Giant Food LLC, Store 427 and
SSNE because these entities do not exist under Rule 12(b)(6).
(Docket Entry # 31).  In seeking to dismiss the complaint as to
these entities, Stop & Shop incorporates all of the arguments
made by the Stop & Shop employees in their motion.  (Docket
Entry ## 14, 31).  Having recommended allowing Consumer
Affairs/Giant Food LLC's motion to dismiss, the motion is moot
insofar as it seeks to dismiss Consumer/Affairs/Giant Food LLC.
Plaintiff opposes the motion and requests entry of a default.
(Docket Entry # 32).

Liberally construing the complaint, it names "The Stop [&]
Shop New England" and "The Stop & Shop Store number 427" as
defendants.  (Docket Entry # 11-1, ¶ 4).  A deputy sheriff of
the Norfolk County Sheriff's Office certifies that he served the
summons and complaint on Store 427 and SSNE by hand delivery on
June 27, 2018.  (Docket Entry # 33).  Not counting the date of
service, Stop & Shop timely filed the motion to dismiss seeking
the dismissal of the nonexistent entities 20 days later on July
17, 2018.  See Fed. R. Civ. P. 6(a)(1)(A), 12(a)(1); Mass. R.
Civ. P. 6(a), 12(a)(1).

97

The complaint alleges that the Stop & Shop employees are employed by Store 427 and that SSNE is in charge of the store. (Docket Entry # 11-1, ¶ 4) (Docket Entry # 17, pp. 29-34) (describing Edwards, Lee, and Bowden as "employees of [Store 427]"). Because the affidavit evidencing that Store 427 and SSNE do not exist lies outside the complaint and does not fall into an exception allowing its consideration on a Rule 12(b)(6) motion, the Rule 12(b)(6) record does not support the argument to dismiss Store 427 and SSNE because they do not exist.

Turning to the arguments incorporated from the Stop & Shop employees' motion and for previously stated reasons, the claims against Store 427 and SSNE are untimely except for the malicious prosecution common law, MCRA, and section 1983 claims as well as the malicious prosecution conspiracy section 1983 claim. The remaining argument is the assertion that the claims are directed against other defendants rather than Store 427 or SSNE and that the "unintelligible assertions" are not actionable. (Docket Entry ## 14, 31).

"The doctrine of *respondeat superior*" subjects an employer such as Store 427 "to liability for the torts of its employees committed while acting within the scope of their employment." Doe v. Medeiros, 266 F. Supp. 3d 479, 484 (D. Mass. 2017) (citing Dias v. Brigham Med. Assocs., Inc., 780 N.E.2d 447, 449 (Mass. 2002)). Neither Stop & Shop in its motion nor the Stop &

98

Shop employees in their motion argue that the complaint does not plausibly show "an employer-employee relationship" or that the misconduct did not fall "within the scope of their employment." Id. (setting out elements to show employer's liability for employee's tortious conduct).  They also do not address the liability of Store 427 or SSNE for malicious prosecution under the common law, the MCRA, or section 1983.  Although there may be viable arguments, including the absence of state action, Stop & Shop and, by incorporation, the Stop & Shop employees do not assert them.  See Curet-Velázquez v. ACEMLA de Puerto Rico, Inc., 656 F.3d at 54; Coons v. Indust. Knife Co., Inc., 620 F.3d at 44.

Overall, the pro se complaint gives Store 427 and SSNE "'fair notice of the claim[s] and the grounds upon which'" the claims rest.  Colón-Fontánez v. Municipality of San Juan, 660 F.3d at 46 (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d at 8).  It sets out the relationship of Store 427 (the employer) and SSNE (which is in charge of the store) to the purported misconduct of Store 427 employees.  The complaint adequately identifies the asserted misconduct of the three employees. Accordingly, Store 427 and SSNE remain as defendants with respect to the timely malicious prosecution claims.

In sum, the remaining claims against the Fairhaven defendants consist of claims against Mello in his individual

capacity for malicious prosecution under the MCRA and section 1983 as well as the malicious prosecution conspiracy claim under section 1983.  The common law malicious prosecution claims also remain against Bouvier, Quintin, Kobza, Haaland, and Mello in their individual capacities.  The section 1983 malicious prosecution and section 1983 malicious prosecution conspiracy claims as well as the MCRA and common law malicious prosecution claims remain in this action as to Store 427, SSNE, and the Stop & Shop employees (Edwards, Lee, and Bowden).  Consumer Affairs/Giant Food LLC is subject to dismissal without prejudice.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court **RECOMMENDS**[40] that:  (1) the Fairhaven defendants' amended motion to dismiss (Docket Entry # 10) be **ALLOWED** in part and **DENIED** in part; (2) the Fairhaven defendants' prior motion to dismiss

---

[40]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection should be included.  <u>See</u> Fed. R. Civ. P. 72(b); Rule 3, Rules for U.S. Magistrate Judges in U.S. District Court for the District of Massachusetts.  The written objections must specifically identify the portion of the Report and Recommendation to which objection is made.  Any party may respond to another party's objections within 14 days after being served with a copy of the objections.  Failure to file objections within the specified time waives the right to appeal the order.

(Docket Entry # 8) be **DENIED** without prejudice as moot;[41] (3) the Stop & Shop employees' motion to dismiss (Docket Entry # 14) be **ALLOWED** in part and **DENIED** in part; (4) the FFD's motion to dismiss (Docket Entry # 20) be **ALLOWED**; (5) the Stop & Shop's motion to dismiss (Docket Entry # 31) be **ALLOWED** in part and **DENIED** in part; (6) the Commonwealth's motion to dismiss (Docket Entry # 34) be **ALLOWED**; (7) Consumer Affairs/Giant Food LLC's motion to dismiss (Docket Entry # 41) be **ALLOWED** and that Consumer Affairs/Giant Food LLC be **DISMISSED** without prejudice; (8) Stop & Shop's motion to set aside the default (Docket Entry # 19) be **ALLOWED**; and (9) plaintiff's motion for a default judgment (Docket Entry # 44) be **DENIED**.


/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[41]  See foonote one.